1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

BRIAN G. BERLAND, et. al.,

Petitioners,

v.

THE CONCLAVE, LLC, et al.,

Respondents.

Case No.: 20-cv-00922-H-WVG

**ORDER**

**(1) GRANTING PETITIONERS' MOTION TO CONFIRM INTERIM ARBITRAL AWARD GRANTING PRELIMINARY INJUNCTION**

[Doc. No. 34.]

**(2) DENYING THE PAGE RESPONDENTS' MOTION TO VACATE INTERIM ARBITRAL AWARD GRANTING PRELIMINARY INJUNCTION**

[Doc. No. 40.]

**(3) DENYING THE PAGE RESPONDENTS' MOTION TO CONFIRM INTERIM AWARD AS FINAL AWARD; AND**

[Doc. No. 10.]

**(4) DENYING PETITIONERS' MOTION TO DISMISS**

[Doc. No. 18.]

On July 16, 2020, Respondents Dagobah LLC, Page10 Ventures, LLC, and Ryan Page (the "Page Respondents") filed a motion requesting that the Court confirm an interim award issued in arbitration on February 4, 2019 against Petitioners Brian G. Berland, Laurita Berland, Vincent Berland, Roxane M. Blake, Aaron Bollig, Steve Burns, Troy E. Burns, Michael Carey, Patrick Carey, Michael Carpenter, Sonya Carpenter, Merrill Conant, Ross Edwards, Kevin Fralick, Tom Gawlick, Justin Jones, William Kalahurka, Jeffrey Menzie, Pamela Menzie, Progenex Investment Group, LLC, D. Paul Rittman, David Schmidt, Scott Schneider, Mark Shields, The Shields Group, LLC, Michael Speer, Dennis Stanley, Gail Stanley, Ronnie Stanley, Randy Staten, Gina Staten, Curtis L. Thomas, Nancy L. Thomas, Carol Thomeczek, William D. Turley, Sheri Turley, Gavin Unruh, Kimberly Unruh, Annetta Vahsholtz, Dennis Vahsholtz, Richard Weiser, Roger Winter, Timothy C. Winter, Jimmy Woodward, Larry Woodward, Mark Zortman, and Anita Zortman ("Petitioners"). (Doc. No. 10 ("the Page Respondents' Motion to Confirm").)[1] On July 24, 2020, Petitioners filed a motion to dismiss the Page Respondents' Motion to Confirm. (Doc. No. 18 ("Petitioners' Motion to Dismiss").) On August 28, 2020, Petitioner Neville Holdings Inc. and Third-Party Respondent Cameron N. Verdi ("Verdi") filed their opposition to the Page Respondents' Motion to Confirm. (Doc. No. 21.) On August 31, 2020, Petitioners filed their opposition to the Page Respondents' Motion to Confirm, (Doc. No. 22), and the Page Respondents filed their opposition to the Petitioners' Motion to Dismiss. (Doc. No. 23.) On September 8, 2020, the Page Respondents filed a reply in support of their Motion to Confirm. (Doc. No. 25.)

On November 12, 2020, Petitioners filed a motion to confirm an interim award granting a preliminary injunction issued in arbitration on November 9, 2020. (Doc. No. 34 ("Petitioners' Motion to Confirm").) On January 4, 2021, the Page Respondents filed their

---

[1] The original petition named Respondents The Conclave, LLC and Progenex Holdings, LLC as also joining in the Petition. (Doc. No. 10 at 1.) The Page Respondents filed a Notice of Errata on July 24, 2020 correcting their original petition to eliminate The Conclave, LLC and Progenex Holdings, LLC and clarifying that only the Page Respondents are bringing this Petition. (Doc. No. 16 at 1.)

opposition to the Petitioners' Motion to Confirm, (Doc. No. 38), their supplemental briefing regarding their July 16, 2020 Motion to Confirm, (Doc. No. 39), and a motion to vacate the interim award granting a preliminary injunction issued in arbitration, (Doc. No. 40 ("the Page Respondents' Motion to Vacate")). On January 11, 2021, Neville Holdings and Third-Party Respondent Verdi filed an opposition to the Page Respondents' supplemental briefing, (Doc. No. 42), and a reply in support of the Petitioners' Motion to Confirm, (Doc. No. 44). Petitioners also filed a reply in support of their Motion to Confirm. (Doc. No. 43.) On January 20, 2021, Petitioners and Neville Holdings and Verdi filed oppositions to the Page Respondents' Motion to Vacate. (Doc. Nos. 45, 46.)

On Monday, February 8, 2021, the Court held a hearing on all four motions. (Doc. No. 47.) Thomas C. Frost appeared for Petitioners and Ryan B. Bell and Jeremy Adamson appeared for the Page Respondents. (Id.) For the reasons that follow, the Court grants the Petitioners' November 12, 2020 Motion to Confirm the preliminary injunction and denies the Page Respondents' January 4, 2021 Motion to Vacate the preliminary injunction. The Court also denies the Page Respondents' July 16, 2020 Motion to Confirm, and Petitioners' July 24, 2020 Motion to Dismiss.

## **Background**

This Petition concerns an ongoing and unusually lengthy arbitration between the parties related to a hostile take-over attempt of the Progenex Holdings, LLC ("Progenex") enterprise. (Doc. No. 10-2 Ex. 1 at 3.) Respondents are a group of management and holding companies and their principals who managed the Progenex enterprise. (Doc. No. 34 at 2.) Until his July 15, 2020 resignation, Respondent Ryan Page was the manager of Progenex. (Doc. No. 34-1 Ex. 1 at 6.) Petitioners are a group of passive investors in the Progenex enterprise that filed a demand for arbitration regarding various federal and state law securities claims as well as breach of fiduciary duty and corporate waste. (Doc. No. 10-2 Ex. 1 at 2–3.)

///

///

## I.    The Arbitration Agreement

The arbitration was initiated pursuant to the First Amended and Restated Operating Agreement of Mercury Ventures LLC, a Wyoming limited liability company. (Doc. Nos. 34-1 Ex. 1 at 2; 38-2 Ex. 11 at 32–33.) The agreement provides that any party may seek and be granted by a court of competent jurisdiction a provisional remedy, including injunctive relief and a receivership, if necessary and appropriate:

> 16.2 Provisional Remedy. Each of the parties reserves the right to file with a court of competent jurisdiction an application for temporary or preliminary injunctive relief, writ of attachment, writ of possession, temporary protective order and/or appointment of a receiver on the grounds that the arbitration award to which the applicant may be entitled may be rendered ineffectual in the absence of such relief.

(Doc. No. 38-2 Ex. 11 at 32.) The agreement also incorporates the JAMS Comprehensive Arbitration Rules, which allow the Arbitrator to grant immediate injunctive if deemed necessary for the protection and conservation of property:

> 24(e) Interim Measures. The Arbitrator may grant whatever interim measures are deemed necessary, including injunctive relief and measures for the protection or conservation of property and disposition of disposable goods. Such interim measures may take the form of an interim or Partial Final Award, and the Arbitrator may require security for the costs of such measures. Any recourse by a Party to a court for interim or provisional relief shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate.

(Doc. No. 34-1 Ex. 1 at 2.) Finally, the arbitration agreement requires that "[t]he award shall be made within ninety (90) days from the date the arbitration proceedings are initiated." (Doc. No. 38-2 Ex. 11 at 32.)

## II.    The Initial Proceedings and Interim Award

Petitioners initiated the underlying arbitration before JAMS on January 27, 2016. (Doc. No. 34-1 Ex. 1 at 2.) The arbitration hearing was held in March 2018. (Id.) Subsequently, the parties engaged in post-hearing mediated settlement discussions until approximately August 2018. (Id. at 4.) On February 4, 2019, the Arbitrator issued an Interim Award. (Id. at 4.) In the Interim Award the Arbitrator found that the claimants – the Petitioners in the present case – "have failed to prove their federal and state securities

law claims . . . dilution, and breach of fiduciary duty/corporate waste claims against Respondents." (Doc. No. 10-2 Ex. 1 at 3.) The Arbitrator also found that Petitioners "have also failed to establish that Respondents have engaged in legally actionable conduct justifying the removal of Ryan Page from his position as manager of Progenex." (Id.)

However, the Arbitrator determined that "while the dilution transactions were legally permissible and valid, the degree to which the passive investors were diluted . . . was inequitable." (Id. at 22.) "[T]o ameliorate the extent of the dilution of the Passive Investor Claimants' shareholder interests in Progenex," the Arbitrator "exercise[d] her equitable authority," and ordered the adjustment of ownership interests in Progenex. (Id. at 3.) The Arbitrator ordered the Petitioners' percentage interest in Progenex to be increased "51% on a pro rata basis," which would be derived from a reduction in the interests of Aaron Thomas, Cameron Verdi, River Pine LLC, and Conclave members. (Id. at 26–27.) The amount by which the interest of Cameron Verdi would be reduced was left blank; the parties were ordered to meet and confer and provide a percentage to the Arbitrator by February 13, 2019. (Id.) The amount by which the interests of the Conclave members would be reduced was also left blank; the Respondents were ordered to provide the necessary information to the Arbitrator by March 5, 2019. (Id.)

The Arbitrator's Interim Award also provided that, "[e]xcept as otherwise provided herein, all claims, counter-claims, and affirmative defenses asserted by or between any parties hereto are hereby dismissed with prejudice." (Id. at 28.) The Arbitrator permitted parties to file corrections or any claims to further relief by March 5, 2019, so long as those filings did not "disput[e] the merits of this Interim Award." (Id.) The Arbitrator specifically noted that the "Interim Award is not intended to be subject to review pursuant to [Cal. Code Civ. Pro.] §§ 1284 and 1285," which provide for judicial review of arbitration awards. (Id.)

## III.   The Arbitration Hearing Is Reopened

On July 31, 2019, the Arbitrator entered an Order Reopening the Arbitration Hearing to review allegedly new material evidence. (Doc. No. 23-2 Ex. A at 1.) The Arbitrator specified that the hearing was being reopened "for limited purposes and for a narrowly

limited period of time," and noted that the "Arbitration has been a very protracted and difficult one . . . and it must be brought to conclusion without further unnecessary delay." (Id. at 1–2.) The Arbitrator stated that the basis of her decision to reopen the hearing was an email from Mr. Thomas Frost, counsel for Petitioners, who urged that new evidence not previously discoverable should be considered. (Id. at 2.) Voluminous exhibits purportedly constituting such allegedly new evidence were submitted by claimants and Third-Party Respondent Verdi and briefing regarding such evidence was filed by the parties. (Doc. No. 34-1 Ex. 1 at 4.)

In December 2019, the Arbitrator was reviewing the new evidence, and was preparing to enter a Final Award by December 30, 2019. (Id.) On December 20, 2019, the Arbitrator was made aware of certain "urgent developments related to the Progenex business which likely would affect the status quo of the parties and/or conservation of property and assets" related to the underlying arbitration. (Id.) Apparently, Respondent Page had (1) terminated the counsel for the Progenex enterprises in various third-party litigations, resulting in default judgments, and (2) issued a multi-million dollar capital call to the shareholders of Progenex, including claimants, which required substantial capital commitments to be made. (Id.) On January 13, 2020, the Page Respondents' counsel notified the Arbitrator that a public auction, which had been noticed after the December capital call, had been held on December 30, 2019. (Id. at 5.) At the auction a third-party entity, Mulligan Partners LLC ("Mulligan"), had been the successful credit bidder, resulting in Mulligan's non-judicial foreclosure over the Progenex assets and intellectual property (the "Foreclosure Event"). (Id.) The Arbitrator was informed that Mulligan, according to the Wyoming Secretary of State, was formed in December 2019 by Matthew Page, the younger brother of Respondent Page. (Id.) The beneficial interest of the foreclosure loans, reportedly around $4,200,000 at the time of the Foreclosure Event, was held by Mulligan. (Id.) The assets of Progenex and its principal operating entity, Matrix Solutions, LLC ("Matrix"), were sold off to an undisclosed third party for an undisclosed amount, apparently claimed as "secured debt." (Id.)

**IV.    The TRO and Accounting Orders**

On January 24, 2020, Petitioners filed an Emergency Equitable Motion seeking a receivership and other relief as a result of the Foreclosure Event and other developments. (Doc. No. 1-3 Ex. 1 at 5.) On January 27, 2020, the Arbitrator issued a Temporary Restraining Order ("TRO") finding that the Final Award "may be rendered ineffectual without the issuance of this Order enjoining the transfer or assignment of any Progenex assets" until "such a time that the Arbitrator is able to hear evidence based on a full and complete accounting of the Progenex enterprise and to determine whether the non-judicial foreclosure" was proper. (Id.) On May 21, 2020, Petitioners filed a motion requesting that this Court confirm the TRO issued by the Arbitrator. (Doc. No. 1.) On July 27, 2020, during a hearing with the parties, the Court denied without prejudice the motion to confirm the TRO. (Doc. No. 19.) The Court noted that the Arbitrator's TRO lacked findings of fact and conclusions of law, did not sufficiently address the standards for issuance of a temporary restraining order, and had been issued several months prior. (Doc. No. 20 at 4–5, 13–15.)

On July 14, 2020, the Arbitrator issued an Order for Appointment of Independent Expert and for an Accounting. (Doc. No. 34-1 Ex. 3.) The Arbitrator stated that independent expert evidence was required regarding the December 2019 capital call and foreclosure sale of Progenex's assets to Mulligan LLC. (Id. at 2.) The Arbitrator noted that the appointment of an independent expert, Mr. Tony Yip of Torrey Partners, LLP, was necessary because the Arbitrator felt unable to obtain the requisite, accurate information from Respondent Page, whose March 2, 2020 declaration was allegedly insufficient and incorrect. (Id. Ex. 1 at 6.) The Arbitrator commanded Mr. Yip to provide a complete forensic accounting of the Foreclosure Event and its preceding transactions, as well as the current ownership of the Progenex enterprise's assets, property, debts, etc. (Id. Ex. 3 at 3.) On October 6, 2020, the Arbitrator issued an Order compelling Respondent Page to produce documents to Mr. Yip by October 20, 2020. (Id. Ex. 4.) Respondent Page did not provide the documents, and instead submitted various objections to the order, which the Arbitrator has not yet resolved. (Id. Ex. 1 at 7.)

## V.    The Preliminary Injunction

On August 20, 2020, Petitioners moved the Arbitrator to convert her January 27, 2020 TRO into a preliminary injunction. (Doc. No. 30 at 2.) On November 9, 2020, the Arbitrator issued a Preliminary Injunction. (Doc. No. 34-1 Ex. 1.) The Arbitrator stated:

> The Arbitrator finds that any full and complete Final Award to which the Claimants are entitled may be rendered ineffectual without the issuance of this Preliminary Injunction, enjoining Respondents from a transfer or assignment of any asset of Progenex Holdings LLC ("Progenex"), including but not limited to the Progenex brand intellectual property, until such time as the Arbitrator is able to: (i) review and consider evidence based on a proper accounting of the Progenex; (ii) determine whether the December 30, 2019 non-judicial foreclosure of the assets of Matrix Solutions LLC ("Matrix") -- and consequent purported transfer of not only the Matrix assets but also the Progenex assets, books, and financial records -- was proper or resulted through a sham transaction and/or actions or inactions of Ryan Page, who was then the sole manager of Progenex, that were orchestrated to favor creditors related to Ryan Page to the detriment of Claimants and others; and (iii) issue her Final Award adjudicating all claims and defenses on the merits.

(Id. at 3.) The Arbitrator concluded that the transfer of the entirety of Progenex's assets to Mulligan appeared to have been engineered to avoid the consequences of default judgments awarded in other litigation and to extinguish the Petitioners' interests in Progenex. (Id. at 8.) The Arbitrator concluded that: (1) Petitioners were likely to prevail on their claims that the transfer of Progenex's assets to Mulligan was legally improper, (2) the balance of hardships favored Petitioners, (3) Petitioners were likely to suffer irreparable harm if Respondents were not enjoined from transferring any remaining Progenex assets, in that any interests in Progenex that may be granted to them in the Arbitrator's Final Award would be without value, and (4) the public interest in securing just and fair results in litigated or arbitrated matters favored the issuance of a preliminary injunction. (Id.) The Preliminary Injunction enjoined the Respondents from transferring or facilitating the transfer of Progenex assets, failing to provide Mr. Yip access to Progenex's financial information, failing to provide Mr. Yip with passwords, login, and account information to Progenex's accounting systems and merchant servicing accounts, and failing to cooperate with reasonable requests for information by Mr. Yip. (Id. at 9.)

20-cv-00922-H-WVG

**Legal Standards**

"The use of arbitration as a means of settling disputes has been accorded specific Congressional endorsement in the [Federal Arbitration Act ("FAA")] and should be encouraged by the federal courts." Aerojet–General Corp. v. Am. Arbitration Ass'n, 478 F.2d 248, 251 (9th Cir. 1973). "The basic purpose of arbitration is the speedy disposition of disputes without the expense and delay of extended court proceedings." Id.

Historically, for an arbitration award to be subject to judicial review, it must be final and binding as to all of the issues presented to the arbitrator. See Millmen Local 550, United Broth. of Carpenters and Joiners of Am., AFL–CIO v. Wells Exterior Trim, 828 F.2d 1373, 1375 (9th Cir. 1987); New United Motor Mfg., Inc. v. United Auto Workers Local, 617 F. Supp. 2d 948, 954 (N.D. Cal. 2008) (citing ConnTech Development Co. v. University of Connecticut Educ. Properties, Inc., 102 F.3d 677, 686 (2nd Cir. 1996)). "[B]ecause of the Congressional policy favoring arbitration when agreed to by the parties, judicial review of non-final arbitration awards 'should be indulged, if at all, only in the most extreme cases.'" Pac. Reinsurance Mgmt. Corp. v. Ohio Reinsurance Corp., 935 F.2d 1019, 1022 (9th Cir. 1991) (quoting Aerojet–General Corp., 478 F.2d at 251).

In Pacific Reinsurance Management Corp., the Ninth Circuit considered as a matter of first impression "[w]hether temporary equitable relief that is necessary to prevent a potential final award from being meaningless can be confirmed and enforced in the district courts." 935 F.2d at 1022. Prior to deciding the merits of the arbitration, the arbitration panel issued an 'interim final order' which created an escrow account and ordered the deposit of disputed funds in that escrow account. Id. The Ninth Circuit stated that judicial confirmation of the "interim final award" was "not inconsistent . . . with the policy favoring arbitration . . . [g]iven the potential importance of temporary equitable awards in making the arbitration proceedings meaningful . . . ." Id. at 1023. The Ninth Circuit stated that "court enforcement of [final temporary equitable awards], when appropriate, is not an undue intrusion upon the arbitral process, but is essential to preserve the integrity of that process." Id. (quotation omitted). The court held that: "temporary equitable orders

calculated to preserve assets or performance needed to make a potential final award meaningful . . . are final orders that can be reviewed for confirmation and enforcement by district courts under the FAA." Id.

Section 9 of the FAA provides for judicial confirmation of arbitration awards:

If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.

9 U.S.C. § 9 (emphasis added). Section 10 provides for the limited circumstances in which a court may vacate an arbitration award:

(1) Where the award was procured by corruption, fraud, or undue means;
(2) Where there was evident partiality or corruption in the arbitrators, or either of them;
(3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or any other misbehavior by which the rights of any party have been prejudiced; or
(4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a); see also Pac. Reinsurance Mgmt. Corp., 935 F.2d at 1023. Section 11, which is not at issue here, provides for modification or correction of arbitration awards in similarly narrow circumstances. 9 U.S.C. § 11. Sections 10 and 11 "provide exclusive regimes for the review provided by the statute." Hall St. Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576, 590 (2008) (emphasis added) (holding the FAA's grounds for vacatur and modification could not be supplemented by contract). Sections 9, 10, and 11 of the FAA "substantiat[e] a national policy favoring arbitration with just the limited review needed to maintain arbitration's essential virtue of resolving disputes straightaway." Id. at 588; see also Kyocera Corp. v. Prudential Bache Trade Servs., 341 F.3d 987, 998 (9th Cir. 2003) ("These grounds afford an extremely limited review authority, a limitation that is designed to preserve due process but not to permit unnecessary public intrusion into private

arbitration matters.'").

Judicial review of an arbitration award is thus "both limited and highly deferential" and the arbitration award "may be vacated only if it is 'completely irrational' or 'constitutes manifest disregard of the law.'" Comedy Club, Inc. v. Improv W. Assocs., 553 F.3d 1277, 1288 (9th Cir. 2009) (quoting Poweragent Inc. v. Elec. Data Sys. Corp., 358 F.3d 1187, 1193 (9th Cir. 2004)); see Aspic Eng'g & Constr. Co. v. ECC Centcom Constructors LLC, 913 F.3d 1162, 1166 (9th Cir. 2019) ("[The Ninth Circuit has] held that arbitrators 'exceed their powers' when the award is 'completely irrational' or exhibits a 'manifest disregard of the law.'"). "Neither erroneous legal conclusions nor unsubstantiated factual findings justify federal court review" of an arbitration award under the FAA. Aspic Eng'g & Constr. Co., 913 F.3d at 1166 (quoting Bosack v. Soward, 586 F.3d 1096, 1102 (9th Cir. 2009)). "[Section 10] of the FAA provides no authorization for a merits review." Biller v. Toyota Motor Corp., 668 F.3d 655, 664 (9th Cir. 2012). Confirmation of an arbitration award typically "is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." Romero v. Citibank USA, Nat'l Ass'n, 551 F. Supp. 2d 1010, 1014 (E.D. Cal. 2008). The "burden of establishing grounds for vacating an arbitration award is on the party seeking it." U.S. Life Ins. Co. v. Superior Nat'l Ins. Co., 591 F.3d 1167, 1173 (9th Cir. 2010) (citing Employers Ins. of Wausau v. Nat'l Union Fire Ins. Co. of Pittsburgh, 933 F.2d 1481, 1489 (9th Cir. 1991)).

## Discussion

## I.    The Preliminary Injunction Award

The Arbitrator's November 2020 Preliminary Injunction is a "temporary equitable order[] calculated to preserve assets or performance needed to make a potential final award meaningful," and is therefore a "final order[] that can be reviewed for confirmation and enforcement by district courts under the [Federal Arbitration Act]." See Pac. Reinsurance Mgmt. Corp., 935 F.2d at 1023. This conclusion is not disputed by the parties. It is also not disputed that the arbitration agreement between the parties authorizes the Arbitrator to issue "whatever interim measures are deemed necessary, including injunctive relief and

measures for the protection or conservation of property and disposition of disposable goods." (Doc. No. 34-1 Ex. 1 at 2.) Rather, the Page Respondents argue the Preliminary Injunction should be vacated pursuant to Section 10(a)(4) of the FAA because the Arbitrator purportedly "exceeded [her] powers." (Doc. Nos. 38 at 6; 40 at 2.) The Page Respondents offer four reasons for why the Arbitrator's Preliminary Injunction was allegedly issued in excess of her authority; the Court addresses each in turn.

For their first and second grounds, the Page Respondents argue that the Preliminary Injunction is invalid under Rule 24(e) and is moot. (Doc. No. 38 at 6–10.) The underlying basis of these grounds is the same: the Page Respondents purportedly are unable to prevent the transfer of Progenex's assets or provide Mr. Yip with Progenex's financial information because they no longer have access to them after Mulligan's December 2019 foreclosure. (Id.) They argue the Preliminary Injunction does not identify an asset that can be protected, in violation of Rule 24(e), and imposes requirements on them with which they cannot comply. (Id.) But the Preliminary Injunction does identify the assets to be protected: the assets, property, and account information of the Progenex enterprise. That the Page Respondents allegedly no longer have control over these items is not a bar to confirmation of the Preliminary Injunction, as one of the remaining issues before the Arbitrator is whether the Foreclosure Event that deprived the Page Respondents of control was valid in the first place. (Doc. No. 34-1 Ex. 1 at 3.) The Arbitrator specifically stated that the Preliminary Injunction would remain in place until she could determine whether the Foreclosure Event was valid, or a fraudulent conveyance of assets intended to prevent the reapportionment of ownership interests benefiting Petitioners outlined in the February 2019 Interim Award. (Id.) The Arbitrator concluded such temporary relief was within the scope of Rule 24(e) because it was a "necessary and appropriate measure to preserve the status quo of the parties and for the protection and conservation of property and assets that are at issue in this Arbitration . . . and will be subject to her Final Award." (Id.) As Petitioners note, the Arbitrator's interpretation and application of the JAMS Rules is entitled to significant deference. (Doc. No. 45 at 5.) Furthermore, there appears to be a

dispute regarding which assets Mulligan actually foreclosed upon – Progenex's, Matrix's, both companies, etc. – and who retains control of what. (See Doc. Nos. 42 at 3–4; 44 at 8).[2] "[Section 10] of the FAA provides no authorization for a merits review." Biller, 668 F.3d at 664. Thus, without a showing of complete irrationality or manifest disregard of the law by the Arbitrator, the Court will not vacate the Arbitrator's conclusion that it is necessary to impose these obligations related to the Progenex assets and information on the Page Respondents in order to protect assets at issue in the arbitration, and that it is possible for them to comply with such obligations. See Aspic Eng'g & Constr. Co., 913 F.3d at 1166; Comedy Club, 553 F.3d at 1288. The Court rejects the Page Respondents' first and second grounds for vacating the Preliminary Injunction award.

For their third and fourth grounds, the Page Respondents argue the Preliminary Injunction fails to analyze two of the factors required for the issuance of a preliminary injunction, namely, the risk of irreparable harm and the likelihood of success on the merits. (Doc. No. 38 at 10–14.) But the Preliminary Injunction does contain a discussion of those factors, albeit a brief one. (Doc. No. 34-1 Ex. 1 at 7–8.) The Arbitrator concluded that the Petitioners were likely to be successful on the issue of whether Mulligan's non-judicial foreclosure of Progenex's assets was legally improper. (Id.) The Arbitrator noted that Respondent Page had not provided her with a contrary explanation to establish the propriety of Mulligan's non-judicial foreclosure of Progenex's assets. (Id. at 8.) She also concluded that Petitioners would suffer irreparable harm if the non-judicial foreclosure issue was not resolved, as their ownership interests in Progenex – as reapportioned in a future Final Award – could be without value. (Id.)

---

[2]    The Page Respondents suggest that Petitioners could participate in an ongoing proceeding in the Third District Court of Utah, in which Mulligan has filed a complaint against Progenex and Matrix seeking a declaratory judgment to definitively establish the rights of the parties in the assets and property at issue following the Foreclosure Event. (Doc. Nos. 38 at 3–4; 38-2 Ex. 3.) But according to Cameron Verdi, the Utah proceedings have been stayed until at least April 29, 2021, at which time the Utah court will hold a status conference to determine the status of the arbitration. (Doc. No. 46.)

The Page Respondents argue that there can be no likelihood of success on the merits because the Arbitrator already indicated in her Interim Award that Petitioners had failed to prove that the Page Respondents had violated various federal and state laws. (Doc. No. 38 at 13.) As a general argument throughout their briefing on all of the motions before the Court, they repeatedly object to the Arbitrator's consideration of the Foreclosure Event at all, and contend it is outside the scope of the original arbitration. (See, e.g., Doc. Nos. 10 at 9; 38 at 13–14; 39 at 2–3.) They argue that the foreclosure by Mulligan was a separate event that did not affect the Interim Award because Petitioners were not awarded damages by the Arbitrator, and the Arbitrator concluded the Petitioners failed to prove their federal and state law claims. (Doc. No. 10 at 9.) While the Arbitrator did reach that conclusion in her Interim Award, she also concluded that "while the dilution transactions were legally permissible and valid, the degree to which the passive investors were diluted . . . was inequitable." (Doc. No. 10-2 Ex. 1 at 22.) She stated she was "exercis[ing] her equitable authority, which has been acknowledged and affirmed by the parties to this arbitration, to adjust the ownership interests in Progenex of the Claimants and Respondents." (Id. at 3.) It is clear that the Arbitrator's intended reapportionment of the ownership interests in Progenex would no longer be possible if its assets were acquired by Mulligan and it generally ceased to be a functioning entity. And the Arbitrator expressly stated in the Preliminary Injunction award that its purpose was to ensure that "any full and complete Final Award to which the Claimants are entitled" – i.e., the adjustment of ownership interests – was not "rendered ineffectual" by the potentially invalid Foreclosure Event. (Doc. No. 34-1 Ex. 1 at 3.) As such, the Court disagrees with the Page Respondents' repeated claim that the Foreclosure Event is entirely irrelevant to the arbitration. Furthermore, this Court's review of the Arbitrator's preliminary injunction is "limited and highly deferential," Comedy Club, 553 F.3d at 1288, and is not "a merits review," Biller, 668 F.3d at 664. Thus, it will not second-guess her finding that the Foreclosure Event is relevant to her Final Award, and within the scope of the arbitration. Indeed, even if the standard of review were less deferential, the Court would be inclined to conclude it is

reasonable to consider a transaction that potentially eliminates the intended relief in an arbitration to be relevant to that arbitration. In sum, the Court rejects the Page Respondents' third and fourth grounds for vacating the Preliminary Injunction award.

The Court concludes that the Page Respondents have not met their burden of establishing grounds for vacating the Arbitrator's Preliminary Injunction award. See S. Life Ins. Co., 591 F.3d at 1173. After reviewing the record in this matter, the Court concludes the Arbitrator did not exceed her powers in issuing the Preliminary Injunction award, and thus must confirm it. See Aspic Eng'g & Constr. Co., 913 F.3d at 1166; Comedy Club, 553 F.3d at 1288. The Court acknowledges the Page Respondents' frustration that an arbitration that was supposed to last no longer than ninety days has instead dragged on for five years. (See Doc. No. 38-2 Ex. 11 at 32.) Arbitration is intended to provide "the speedy disposition of disputes without the expense and delay of extended court proceedings," Aerojet–General Corp., 478 F.2d at 251, and it is disappointing to the Court that this arbitration proceeding has been unable to accomplish that purpose. The Court's conclusion to confirm the Preliminary Injunction should not be viewed as an endorsement of the manner in which the proceedings have unfolded, but rather a product of the narrow scope of review provided for by the FAA.[3]

## II.    The Interim Award

Finally, the Court addresses the Page Respondents' request that the Court confirm the Interim Award issued by the Arbitrator in February 2019 as final. (Doc. No. 10.) Unlike the Preliminary Injunction, the Arbitrator's Interim Award is not a "temporary equitable order[] calculated to preserve assets or performance needed to make a potential final award meaningful," and is therefore not a "final order[] that can be reviewed for confirmation and enforcement by district courts under the FAA." See Pac. Reinsurance Mgmt. Corp., 935 F.2d at 1023. The decisions cited by the Page Respondents in support of their proposition

---

[3]    Petitioners represent that the final hearing session will proceed in March or April 2021, and the Arbitrator's Final Award will be issued soon thereafter. (Doc. No. 43 at 5.)

that "courts have often enforced interim arbitration awards as final" are distinguishable, unpersuasive, non-binding, and in some cases do not even stand for that holding. (Doc. No. 10 at 6–8.) As Petitioners note, although the Interim Award made initial findings of fact and conclusions of law, it is not in final form because of the unresolved issues regarding the redistribution of ownership interests in the Progenex enterprise, as well as additional relevant events, like the Foreclosure Event, that have occurred since the Interim Award was issued. (Doc. No. 22 at 6.) Indeed, the Arbitrator expressly states: "This Interim Award is not intended to be subject to review under CCP §§ 1284 and 1285," which are California's provisions for judicial review of an arbitration award. (Doc. No. 10-2 Ex. 1 at 28.) And the Arbitrator's subsequent issuance of the Preliminary Injunction, in which she notes any "Final Award . . . may be rendered ineffectual without the issuance of this Preliminary Injunction," (Doc. No. 34-1 Ex. 1 at 3), lends further support to the conclusion that the Interim Award was not intended to be final, and therefore is not eligible for confirmation pursuant to Section 9.

Furthermore, the Court notes that even if the Interim Award was eligible to be confirmed under Section 9 of the FAA, the Page Respondents' Motion to Confirm would likely be time-barred. Section 9 requires parties applying to the court for an order confirming an arbitration award to do so "at any time within one year after the award is made." 9 U.S.C. § 9. The Interim Award was issued on February 4, 2019 and the Page Respondents' motion was filed on July 16, 2020. (Doc. No. 10.)[4] In conclusion, the Court

---

[4]       As the Page Respondents' note, the Ninth Circuit apparently has not addressed the issue of whether the language of Section 9 of the FAA imposes a mandatory one-year deadline, or whether parties may seek confirmation of arbitration awards a year after their issuance. The Page Respondents urge the Court to follow the Fourth, Sixth, and Eighth Circuits in holding that the statute's use of "may" rather than "must" in the clause affording one year to the party wishing to confirm an award indicates that it was intended to be a permissive provision. (Doc. No. 23 at 5–7.) But the Second Circuit has held that "section 9 of the FAA imposes a one-year statute of limitations on the filing of a motion to confirm an arbitration award under the FAA." Photopaint Techs., LLC v. Smartlens Corp., 335 F.3d 152, 158 (2d Cir. 2003). The Second Circuit relied on Cortez Byrd Chips, Inc. v. Bill Harbert Construction Co., decided after the aforementioned Fourth, Sixth, and Eighth Circuit decisions, in which the Supreme Court held that with regards to the FAA, "the mere use of 'may' [in the FAA] is not necessarily conclusive of congressional intent to provide for a permissive or discretionary authority." 529 U.S. 193, 199 (2000). In light of the

20-cv-00922-H-WVG

1   denies the Page Respondents' Motion to Confirm the Interim Award as a Final Award.[5]

2   Because the Court denies the Page Respondents' Motion to Confirm, (Doc. No. 10), the

3   Court denies the Petitioners' Motion to Dismiss the Page Respondents' motion, (Doc. No.

4   18), as moot.

5   ///

6   ///

7   ///

8   ///

9   ///

10  ///

11  ///

12  ///

13  ///

14  ///

15  ///

16  ///

17

18  _____

19  Supreme Court's direction, the Second Circuit concluded that a mandatory construction of Section 9 was "intuitive" and "advance[d] important policy goals of finality." Photopaint, 335 F.3d at 158. Were the

20  Court deciding this issue, it would be inclined to agree with the Second Circuit's construction of Section 9, making the Page Respondents' motion untimely filed.

21

22  [5]    The Court also rejects the Page Respondents' request that the Court "remand this action back to the Arbitrator with instructions to enter a Final Award by a specific date." (Doc. No. 10 at 10.) The Court

23  does not have the authority the Page Respondents claim. They argue that Section 10 of the FAA "authorizes federal courts to fashion relief where 'a mutual, final, and definite award upon the subject

24  matter was not made.'" (Doc. No. 23 at 10.) This reading is inconsistent with the plain text of the statute, as well as the holding of Hall Street Associates. See 555 U.S. at 590. Courts may only vacate arbitration

25  awards when arbitrators improperly execute their powers; they may not fashion any relief they might like. See 9 U.S.C. § 10(a)(4). The Page Respondents also argue that Section 10 "contemplates that a federal

26  court may remand a petition back to the arbitrator with instructions, including instructions to render an award by a certain date." (Doc. No. 23 at 10.) The plain text of the FAA establishes that courts do not

27  have the broad powers that the Page Respondents claim; a court may only direct a rehearing by the arbitrators after vacating an arbitration award. 9 U.S.C. § 10(b). It does not have the authority, under

28  Section 10 of the FAA, to order an arbitrator to issue an award within a certain time frame.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **<u>Conclusion</u>**

After reviewing the record and relevant standards, the Court (1) grants Petitioners' Motion to Confirm the Preliminary Injunction issued on November 9, 2020, (Doc. No. 34), (2) denies the Page Respondents' Motion to Vacate the Preliminary Injunction, (Doc. No. 40), (3) denies the Page Respondents' Motion to Confirm the Interim Award issued on February 4, 2019, (Doc. No. 10), and (4) denies the Petitioners' Motion to Dismiss, (Doc. No. 18).

**IT IS SO ORDERED.**

DATED: February 9, 2021

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

18