# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN G. BERLAND, et. al.,<br><br>Petitioners,<br><br>v.<br><br>THE CONCLAVE, LLC, et al.,<br><br>Respondents. | Case No.: 20-cv-00922-H-WVG<br><br>**ORDER DENYING PETITIONERS' MOTION FOR AN ORDER TO SHOW CAUSE RE CONTEMPT**<br><br>[Doc. No. 52.] |

On April 27, 2021, Petitioners Brian G. Berland, Laurita Berland, Vincent Berland, Roxane M. Blake, Aaron Bollig, Steve Burns, Troy E. Burns, Michael Carey, Patrick Carey, Michael Carpenter, Sonya Carpenter, Merrill Conant, Ross Edwards, Kevin Fralick, Tom Gawlick, Justin Jones, William Kalahurka, Jeffrey Menzie, Pamela Menzie, Progenex Investment Group, LLC, D. Paul Rittman, David Schmidt, Scott Schneider, Mark Shields,

The Shields Group, LLC, Michael Speer, Dennis Stanley, Gail Stanley, Ronnie Stanley, Randy Staten, Gina Staten, Curtis L. Thomas, Nancy L. Thomas, Carol Thomeczek, William D. Turley, Sheri Turley, Gavin Unruh, Kimberly Unruh, Annetta Vahsholtz, Dennis Vahsholtz, Richard Weiser, Roger Winter, Timothy C. Winter, Jimmy Woodward, Larry Woodward, Mark Zortman, and Anita Zortman (collectively, the "Petitioners") filed a motion requesting that the Court issue an order to show cause why Respondents Dagobah LLC, Page10 Ventures, LLC, and Ryan Page (collectively, the "Page Respondents") and certain non-parties should not be held in contempt of Court. (Doc. No. 52.)

On April 27, 2021, Entity Petitioner Neville Holdings Inc. and Third-Party Respondent Cameron N. Verdi filed a joinder petition in support of Petitioners' motion. (Doc. No. 53.) On May 17, 2021, the Page Respondents filed their opposition to the motion. (Doc. No. 58.) On May 21, 2021, Respondent Progenex Holdings, LLC filed a joinder petition in support of Petitioners' motion. (Doc. No 61.) On May 24, 2021, Mulligan Capital LLC, Lindsay Page, Matthew Page, Annette Page, Janelle Page, Sharee Page, Steve Page, Paul Gomez, Luke Adams, and Kevin Oliver (collectively, the "Mulligan Parties") filed their opposition to the motion. (Doc. Nos. 62, 68.) On May 24, 2021, Petitioners and Third-Party Respondent Cameron N. Verdi each filed a reply to the Page Respondents. (Doc. Nos. 65, 66.) On June 1, 2021, Petitioners and Third-Party Respondent Cameron N. Verdi each filed a reply to the Mulligan Parties. (Doc. Nos. 70, 71.) On June 2, 2021, the Court took the matter under submission. (Doc. No. 72.) For the reasons that follow, the Court denies the Petitioners' request for an order to show cause re contempt.

## Background

The factual background of this lengthy arbitration dispute is laid out in this Court's prior order. (Doc. No. 48.) Petitioners are a group of passive investors in the Progenex enterprise that filed a demand for arbitration regarding various federal and state law securities claims as well as breach of fiduciary duty and corporate waste. (Doc. No. 10-2 Ex. 1 at 2–3.) Respondents are a group of management and holding companies and their principals who managed the Progenex enterprise. (Doc. No. 48 at 3.) The Mulligan Parties

and Matrix Solutions, LLC are not parties to the arbitration. (Doc. No. 34-1 Ex. 1 at 6.) Petitioners initiated the underlying arbitration before JAMS on January 27, 2016. (Id. at 2.) The arbitration agreement required that "[t]he award shall be made within ninety (90) days from the date the arbitration proceedings are initiated." (Doc. No. 38-2 Ex. 11 at 32.) The arbitration was held March 19–23, 2018. (Id.) On February 4, 2019, the Arbitrator issued an Interim Award, which found that the Petitioners had "failed to prove their federal and state securities law claims . . . dilution, and breach of fiduciary duty/corporate waste claims against Respondents." (Doc. No. 10-2 Ex. 1 at 3.) But the Interim Award also provided that the Arbitrator intended to exercise her equitable authority and order the adjustment of ownership interests in Progenex Holdings, LLC in her final award. (Id.) On July 31, 2019, the Arbitrator reopened the arbitration hearings to review allegedly new material evidence. (Doc. No. 23-2 Ex. A at 1.)

In December 2019, various individuals, including the Mulligan Parties, who had made secured loans to Matrix Solutions, LLC – one of the companies involved in the Progenex enterprise – notified Respondent Ryan Page that they intended to exercise their right to foreclose on the company given their unpaid debts. (Doc. Nos. 59-5 March 2, 2020 Page Decl. ¶¶ 63–68; 59-8 April 21, 2021 Page Decl. ¶ 44.) The group of foreclosing lenders claimed to be owed $4,200,000 in the aggregate. (Doc. Nos. 34-1 Ex. 3 at 3; 59-5 March 2, 2020 Page Decl. ¶¶ 12–30.) On December 30, 2019, a foreclosure auction was held; no parties other than Mulligan Capital, LLC – which was formed by the Mulligan Parties and other creditors as a collections company – bid on Matrix Solutions. (Doc. No. 59-5 March 2, 2020 Page Decl. ¶¶ 106–07.) As a result of the foreclosure, Mulligan Capital acquired all of Matrix Solutions' property, intellectual property, and assets, which included the property, intellectual property, and assets of Progenex Holdings, LLC pursuant to an agreement between the two entities. (Doc. Nos. 59-6 June 5, 2020 Page Decl. ¶¶ 6, 12; 59-8 April 21, 2021 Page Decl. ¶¶ 18–19.)

On January 27, 2020, upon learning of the foreclosure, the Arbitrator issued a Temporary Restraining Order ("TRO") enjoining the transfer or assignment of any

Progenex assets or completing or facilitating any transfer of assets pursuant to the non-judicial foreclosure. (Doc. No. 34-1 Ex. 2 at 6.) But Petitioners did not file a motion requesting for the Court to issue an order confirming the TRO until May 21, 2020. (Doc. No. 1.) On July 27, 2020, the Court denied the motion to confirm the TRO noting several deficiencies with the application. (Doc. No. 19.) On July 20, 2020, Mulligan Capital and several of its members, including the Mulligan Parties, filed suit in the Third District Court for the State of Utah seeking a declaratory ruling that the foreclosure of the assets and property of Matrix Solutions and Progenex Holdings by Mulligan Capital was valid and final. (Doc. No. 62-4 Ex. 3.)[1] On January 28, 2021, the Utah court entered an order temporarily staying the proceedings and planning to revisit the stay after April 2021. (Doc. No. 59-15 at 1.) On May 5, 2021, the Mulligan Parties filed a motion to lift the stay in the Utah Court action. (Id.)

On July 14, 2020, the Arbitrator issued an Order for Appointment of Independent Expert and for an Accounting of, among other things, the foreclosure, the underlying transactions and secured loans, and the assets remaining in Progenex Holdings and other entities. (Doc. No. 34-1 Ex. 3.) On October 6, 2020, the Arbitrator issued an Order compelling Respondent Page to produce documents to the Accountant by October 20, 2020. (Doc. No. 52-2 Ex. 11.) On November 9, 2020, the Arbitrator granted a preliminary injunction. (Doc. No. 34-1 Ex. 1.) Petitioners moved to confirm the preliminary injunction on November 12, 2020. (Doc. No. 34.) Following briefing, on February 9, 2021, the Court granted the Petitioners' motion to confirm the Preliminary Injunction as an Order of the Court (the "Injunction"). (Doc. No. 48.) The Injunction restrained and enjoined

---

[1] Petitioners make evidentiary objections to all of the exhibits attached to the Mulligan Parties' opposition, as well as the declaration itself. (Doc. No. 71-2.) For Exhibit 3, which is the only exhibit submitted by the Mulligan Parties that the Court relies upon, the Court need not rule on the Petitioners' objection; the exhibit is a state court complaint, of which the Court can take judicial notice. See Harris v. County of Orange, 682 F.3d 1126, 1132 (9th Cir. 2012) (taking judicial notice of "documents on file in federal or state courts"). The Court also notes that the exact same document was submitted by Third-Party Respondent Cameron Verdi, (Doc. No. 65-1 Ex. A), who has joined Petitioners' motion, but Petitioners did not raise an evidentiary challenge to its authenticity.

Respondents The Conclave, LLC, Progenex Holdings, LLC, Riverpine, LLC, Dagobah, LLC, Page10 Ventures, LLC, Ryan Page, Steve Shamion, and their principals, assigns, affiliates, successors, or anyone acting at or under Respondents' discretion or in concert with them (collectively, the "Enjoined Parties") from the following acts:

1. Directly or indirectly transferring, setting off, changing, selling, pledging, assigning, liquidating, hiding, secreting, or otherwise disposing of, or withdrawing, conveying, assigning and/or otherwise moving any property or assets owned and/or licensed by Progenex of any type whatsoever, specifically including, without limitation, the Progenex brand trademark and any other intellectual property utilized in any fashion in connection with any of the businesses engaged in by Progenex, its principals, assigns, affiliates, and or successors;

2. Completing or facilitating in any manner any transfer of assets of Progenex pursuant to the December 2019 non-judicial foreclosure of the assets of MATRIX SOLUTIONS, LLC;

3. Failing and refusing to provide full and complete access to any or all financial information, bank accounts, business agreements, and Progenex-related financial correspondence, emails, texts, or other documentation to the independent expert accountant, Tony Yip (the "Accountant'), appointed by the Arbitrator to complete an accounting of the Progenex enterprise;

4. Failing and refusing to timely cooperate with the reasonable requests for information by the Accountant;

5. Failing and refusing to provide all passwords, login, and account information, and records to the Accountant of the accounting program(s) utilized by and for Progenex or any Enjoined Parties' separate accounting systems related to or concerning the Progenex enterprise, including all subsidiary accountings;

6. Failing and refusing to provide to the Accountant all passwords and login account information and records for any merchant servicing account(s) utilized by and for the Progenex or any Enjoined Parties' separate merchant sales related to or concerning the Progenex enterprise, including all subsidiary sales and transactions.

(Doc. No. 34-1 Ex. 1 at 8–9.)

By the present motion, Petitioners request that the Court issue an order to show cause why Respondents Ryan Page, Dagobah LLC, and Page10 Ventures, as well as non-parties Mulligan Capital LLC, Lindsay Page, Matthew Page, Annette Page, Janelle Page, Sharee

Page, Steve Page, Paul Gomez, Luke Adams, and Kevin Oliver should not be held in contempt of Court for allegedly violating (i) the asset freeze provisions and (ii) the document production provisions of the Court's Injunction. (Doc. No. 52.) The Page Respondents maintain that this Court should not hold them in contempt because the conduct Petitioners object to happened before the Court's injunction was issued, they have not transferred any assets or property since the December 2019 foreclosure, and they have complied with the Injunction. (Doc. No. 58.) The Mulligan Parties dispute the Arbitrator's ability to exercise jurisdiction over them, as non-parties to the arbitration, and further maintain that the foreclosure was legitimate, and that the Utah court is the only proceeding with jurisdiction over all of the relevant parties. (Doc. No. 68.)

## Legal Standards

A district court has the inherent power to enforce its orders through civil contempt. See Shillitani v. United States, 384 U.S. 364, 370 (1966); Cal. Dep't of Soc. Servs. v. Leavitt, 523 F.3d 1025, 1033 (9th Cir. 2008). "Civil contempt . . . consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply." Inst. of Cetacean Rsch. v. Sea Shepherd Conservation Soc'y, 774 F.3d 935, 945 (9th Cir. 2014) (citing In re Dual-Deck Video Cassette Recorder Antitrust Litig., 10 F.3d 693, 695 (9th Cir. 1993)). To establish a prima facie case for civil contempt, "[t]he moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court." F.T.C. v. Affordable Media, 179 F.3d 1228, 1239 (9th Cir. 1999) (citing Stone v. City and Cty. of San Francisco, 968 F.2d 850, 856 n.9 (9th Cir. 1992)). Clear and convincing evidence requires "more than proof by a preponderance of the evidence and less than proof beyond a reasonable doubt." Singh v. Holder, 649 F.3d 1161, 1168 (9th Cir. 2011). Evidence may only be considered "clear and convincing" if it demonstrates that the factual contentions are "highly probable." Sophanthavong v. Palmateer, 378 F.3d 859, 866 (9th Cir. 2004). "The contempt need not be willful." In re Dual-Deck, 10 F.3d at 695 (internal quotation marks and citation omitted). "Contempt sanctions, however, are not warranted where the nonmoving party's action

6

20-cv-00922-H-WVG

'appears to be based on a good faith and reasonable interpretation' of the court's order." Newmark Realty Capital, Inc. v. BGC Partners, Inc., No. 16-cv-01702-BLF, 2018 WL 2416242, at *2 (N.D. Cal, May 29, 2018) (quoting In re Dual-Deck, 10 F.3d at 695).

If the Court finds a prima facie case of civil contempt, the burden shifts to the alleged contemnor to demonstrate that it took all reasonable steps to comply yet was unable. Stone, 968 F.2d at 856 n.9. "A party's inability to comply with a judicial order constitutes a defense to a charge of civil contempt." Affordable Media, 179 F.3d at 1239; see U.S. v. Rylander, 460 U.S. 752, 757 (1983) ("While the court is bound by the enforcement order, it will not be blind to evidence that compliance is now factually impossible. Where compliance is impossible, neither the moving party nor the court has any reason to proceed with the civil contempt action."). "[T]he party asserting the impossibility defense must show 'categorically and in detail' why he is unable to comply." Id. (citing N.L.R.B. v. Trans Ocean Export Packing, Inc., 473 F.2d 612, 616 (9th Cir. 1973)); see Rylander, 460 U.S. at 757 ("It is settled, however, that in raising this defense, the defendant has a burden of production."). Substantial compliance also is a defense to civil contempt—"[i]f a violating party has taken 'all reasonable steps' to comply with the court order, technical or inadvertent violations of the order will not support a finding of civil contempt." Gen. Signal Corp. v. Donallco, Inc., 787 F.2d 1376, 1379 (9th Cir. 1986); see Inst. of Cetacean Rsch., 774 F.3d at 945.

In contempt proceedings, the propriety of the underlying order is not at issue; rather, the question for the Court is whether the alleged contemnor has the present ability to obey the Court's order. See Maggio v. Zeitz, 333 U.S. 56, 69 (1948). "[A] contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed and thus become a retrial of the original controversy." Id.; Rylander, 460 U.S. at 756–57.

///

///

///

## Discussion

I.  **Whether Petitioners Have Shown By Clear and Convincing Evidence That The Page Respondents and/or the Mulligan Parties Violated The Injunction's Asset Freeze Provisions**

"Arbitration awards are not self-enforcing. Rather, they must be given force and effect by being converted to judicial orders by courts." Aguilar v. Carter's Inc., No. 1:19-CV-03178-SMJ, 2020 WL 7974335, at *1 (E.D. Wash. Nov. 17, 2020). The Injunction contains two "asset freeze" provisions, which enjoin: (1) transferring or otherwise moving "any property or assets owned and/or licensed by Progenex [Holdings, LLC][2] of any type whatsoever," (the "General Asset Freeze" provision), and (2) "completing or facilitating in any manner any transfer of assets of Progenex [Holdings, LLC] pursuant to the December 2019 non-judicial foreclosure of the assets of Matrix Solutions, LLC" (the "Foreclosure Freeze" provision). (Doc. No. 34-1 Ex. 1 at 9.)

Petitioners contend that the Page Respondents and the Mulligan Parties have violated the General Asset Freeze by engaging in a "fire sale" liquidation of Progenex-branded inventory. (Doc. No. 52 at 7–9.) The only time-relevant[3] evidence Petitioners provide to the Court is of isolated online orders of protein powder made on Progenex's official website and Amazon e-store on April 24, 2021. (Doc. Nos. 52 at 9–10; 52-1 Exs. 7–10.) The Court need not delve into which, if any, of the Page Respondents or the Mulligan Parties were (or could even be held) responsible for the sales on the Progenex website and Amazon page because Petitioners have not met their burden of proving by

---

[2] (See Doc. No. 34-1 Ex. 1, Arbitrator's Preliminary Injunction, at 3 (abbreviating "Progenex Holdings LLC" as "Progenex").)

[3] The Court's review is limited to whether the conduct after the Court's February 9, 2021 Injunction constitutes contempt. See Arkwright Advanced Coating, Inc. v. MJ Sols. GmbH, No. CIV. 14-5030 DSD/TNL, 2015 WL 5602840, at *1 (D. Minn. Sept. 23, 2015) (noting that the "arbitration award at issue is not a court order and, as such, cannot serve as the basis for a contempt order"); Donel Corp. v. Kosher Overseers Ass'n of Am., Inc., No. 92–8377, 2001 WL 1135625, at *1 (S.D.N.Y. Sept. 26, 2001) (finding no contempt based on conduct occurring after the arbitration award, but before the court confirmed that award, because the award was "not enforceable until it was confirmed by [the] Court").

clear and convincing evidence that the online sales involved the transfer, sale, move, etc. of "property or assets owned and/or licensed by Progenex [Holdings, LLC]." The evidence in the record shows that in December 2019, the entirety of Progenex Holdings' assets and property were transferred to Mulligan Capital via a non-judicial foreclosure of Matrix Solutions.[4] (Doc. Nos. 59-6 June 5, 2020 Page Decl. ¶ 6; 59-8 April 21, 2021 Page Decl. ¶¶ 4–11, 23.) The record also shows that there is an ongoing dispute in several forums, including the underlying arbitration and the Utah state court action, over whether the December 2019 foreclosure and underlying transactions were legitimate. (Doc. No. 62-4 Ex. 3.) But Petitioners have not presented any evidence that the foreclosure has been held to be legally invalid by a court of competent jurisdiction. Nor have they provided sufficient evidence demonstrating that Progenex Holdings – not Mulligan Capital – owns and/or licenses the protein products being sold on the website and Amazon. As such, they have not provided the Court with clear and convincing evidence that on April 24, 2021, the Progenex products sold online were owned and/or licensed by Progenex Holdings. See Affordable Media, 179 F.3d at 1239.

Petitioners argue that the publicly available U.S. Patent and Trademark Office ("USPTO") records of trademark registrations establish that Progenex Holdings owned the Progenex intellectual property at all relevant times and remains the owner of record of all Progenex brand trademarks today. (Doc. No. 52 at 9 n.12.) Petitioners overstate the record. The USPTO records show that the assignments of the Progenex trademarks from Progenex Holdings to Matrix Solutions, and then from Matrix Solutions to Mulligan Capital were executed on December 30, 2019, prior to the issuance of any TRO or injunction. (Doc. No.

---

[4] According to Ryan Page's declarations and the complaint in the Utah state court action, there was a security agreement between Progenex Holdings and Matrix Solutions, whereby Matrix Solutions made several loans to Progenex Holdings, and secured its loans with Progenex Holdings' assets, including its trademarks and websites. (Doc. Nos. 59-5 March 2, 2020 Page Decl. ¶ 31; 59-8 April 21, 2021 Page Decl. ¶ 18; 62-4 Ex. 3 ¶¶ 9–18.) Thus, at the time of the foreclosure, Matrix Solutions obtained all of Progenex Holdings' assets, and Mulligan Capital then obtained all of Matrix Solutions' assets. (Doc. Nos. 59-6 June 5, 2020 Page Decl. ¶ 6; 59-8 April 21, 2021 Page Decl. ¶¶ 4–11.)

59-7 Ex. 1.) On January 27, 2020, after being notified of the foreclosure, the Arbitrator issued a TRO that enjoined "[d]irectly or indirectly . . . assigning and/or otherwise moving any property or assets owned and/or licensed by the so-called Progenex Enterprises of any type whatsoever, specifically including . . . the 'Progenex' brand trademark and any other intellectual property." (Doc. No. 34-1 Ex. 2 at 6.) On March 30, 2020, the assignments from Progenex Holdings to Matrix Solutions to Mulligan Capital were registered with the USPTO. (Doc. No. 59-7 Ex. 1.) The parties dispute whether the recorded assignments were in violation of the arbitrator's order. On July 27, 2020, the Court declined to confirm the arbitrator's TRO. (Doc. No. 19.) In October 2020, Third-Party Respondent Verdi notified the USPTO of the arbitrator's TRO and stated that the ownership of the trademarks was in dispute. (Doc. No. 38-2 Ex. 10.) As a result, the USPTO changed the Progenex trademarks' ownership registration back to Progenex Holdings. (Doc. No. 44-2 Ex. C.)[5] The Court notes that the assignment of the trademarks from Progenex Holdings to Matrix Solutions to Mulligan Capital occurred in December 2019, prior to any TRO or injunction by the Arbitrator or this Court. These records show that the ownership of the Progenex trademarks is disputed, which is far from satisfying the clear and convincing evidence standard required for a contempt order.[6]

Petitioners also argue that the sale of "Progenex brand inventory," even products not owned and/or licensed by Progenex Holdings, is sufficient to establish a violation of the

---

[5] On November 9, 2020, the Arbitrator issued a preliminary injunction. (Doc. No. 34-1 Ex. 1.) On February 9, 2021, the Court confirmed the Injunction as an Order of the Court. (Doc. No. 48.)

[6] Furthermore, even assuming Progenex Holdings was the undisputed owner of the Progenex trademarks, Petitioners have not explained why that would prove that the Page Respondents or the Mulligan Parties engaged in enjoined conduct. The Page Respondents and Mulligan Parties acknowledge the dispute over the rightful ownership of the trademarks, but contend that even assuming Progenex Holdings is the legal owner of the trademarks, Petitioners have not offered any evidence that Progenex Holdings licensed the use of those trademarks to Mulligan Capital. (Doc. No. 68 at 14–15.) Which would mean, the Mulligan Parties argue, that Petitioners would have only proved that Mulligan Capital committed trademark infringement by selling products that it owned with the "Progenex" brand label without a license, not that any products "owned and/or licensed" by Progenex Holdings were sold. (Id.)

Injunction's General Asset Freeze provision. (Doc. No. 52 at 7, 9.)[7] Petitioners focus on the second portion of the provision, which refers to "the 'Progenex' brand trademark and any other intellectual property utilized in any fashion in connection with any of the businesses engaged in by Progenex." (Doc. Nos. 34-1 Ex. 1 at 9; 71 at 7.) The Mulligan Parties and the Page Respondents argue that the Injunction does not clearly enjoin any and all activity relating to the "Progenex" brand. (Doc. No. 58 at 12 n.5.) They argue that it is not an obvious reading of the Injunction that using the Progenex brand to sell products and inventory owned by Mulligan Capital, not Progenex Holdings, violates the General Asset Freeze provision. (Id.) "[A] person should not be held in contempt if his action appears to be based on a good faith and reasonable interpretation of the [court's order]." In re Dual-Deck, 10 F.3d at 695 (quoting Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc., 689 F.2d 885, 889 (9th Cir. 1982)). The interpretation offered by the Mulligan Parties and the Page Respondents – that the Injunction enjoins the sale or transfer of property and assets owned and/or licensed by Progenex Holdings, but does not enjoin all activity related to products bearing the Progenex brand – is a reasonable one. It is consistent with the plain language of the General Asset Freeze provision; the first part broadly enjoins the sale and transfer of "property or assets owned and/or licensed by Progenex of any type whatsoever," and then lists "the 'Progenex' brand trademark and any other intellectual property" as a specific example of the type of property that should not be transferred. (Doc. No. 34-1 Ex. 1 at 9.)[8]

Finally, in their replies, Petitioners and Third-Party Respondent Cameron Verdi note that on May 5, 2021, the Mulligan Parties filed a motion to lift the stay in the related Utah

---

[7] The Court notes that Petitioners have provided evidence of two sales of protein powder. (Doc. No. 52-1 Exs. 7–10.). The Court also notes that the bond issued by the Arbitrator was $1,000. (Doc. No. 34-1 Ex. 1 at 10.)

[8] The Court notes Petitioners repeatedly refer to the products being sold as "inventory licensed by Progenex," (Doc. No. 52 at 7), and "assets and inventory owned and licensed by Progenex," (id. at 10). But the Court has concluded that Petitioners have not provided clear and convincing evidence that the products being sold labeled as "Progenex" are in fact owned and/or licensed by Progenex Holdings. And Petitioners are incorrect that Progenex-branded products are "by any definition . . . property licensed by Progenex." (Doc. No. 66 at 2.)

action. (Doc. Nos. 65 at 2; 66 at 2; 71 at 3.) They argue that this conduct violates the Foreclosure Freeze provision. (Id.) But the Mulligan Parties seek a declaratory judgment as to the validity of an asset transfer via foreclosure that already occurred, not to transfer additional or remaining assets out of Progenex Holdings. Consistent with the record before this Court and the record before the Arbitrator, there is no violation of this Court's Injunction by proceeding in the Utah court, a forum that would have jurisdiction over the relevant parties. The Court notes that the Arbitrator has repeatedly stated that she does not have jurisdiction over the Mulligan Parties, nor over the propriety of the foreclosure. (Doc. Nos. 59-1 at 8:17-23; 59-3 at 20:11-13, 21:2-4.) The Court also notes that at the time of the foreclosure in December 2019, the Page Respondents were in possession of an Interim Award that found in their favor, other than an equitable adjustment of the ownership interests. (Doc. No. 10-2 Ex. 1 at 3.) And the Arbitrator has stated that the allegedly new evidence that resulted in the arbitration hearings being reopened in July 2019 did not change the conclusions of the Interim Award. (Doc. No. 59-1 at 11:1-4.)

Under the present record, the Court concludes Petitioners have not met their burden of showing by clear and convincing evidence that the online sales of Progenex-branded products violate a specific and definite order of this Court. The Court accordingly denies Petitioners' motion for an order to show cause why the Page Respondents and the Mulligan Parties should not be held in contempt for purportedly violating the asset freeze provisions of the Injunction.

///
///
///
///
///
///
///
///

## II. Whether Petitioners Have Shown By Clear and Convincing Evidence That The Page Respondents and/or the Mulligan Parties Violated The Injunction's Document Production Provisions

Petitioners also contend that Respondents failed to provide the appointed Accountant with relevant financial records, account information, and other reasonable requests for information related to or concerning the Progenex enterprise in violation of the Court's Injunction. (Doc. No. 34-1 Ex. 1 at 9.) Petitioners contend that the "Enjoined Parties" have interfered with the forensic accounting ordered by the Arbitrator. (Doc. No. 52 at 10.) But Petitioners have not provided clear and convincing evidence that the Page Respondents, or more specifically, Ryan Page,[9] have failed to comply with a specific and definite order to produce certain documents.

Petitioners argue that Respondent Ryan Page "spoliated evidence by purportedly transferring the Progenex-related financial records at issue to Mulligan . . . so that these documents now are wholly unavailable for use in the underlying Arbitration proceeding." (Doc. Nos. 52 at 15; 66 at 3.) This contention is unpersuasive. The referenced transfer of documents and account information as part of Mulligan Capital's foreclosure of Matrix Solutions happened in December 2019 – over a year before the Court's Injunction was issued. Conduct undertaken as part of that foreclosure, before the Injunction was in place, cannot serve as the basis for a contempt order.

Petitioners also contend that Respondent Page has not produced responsive documents to the Accountant in violation of the Injunction. (Doc. No. 52 at 11.) But the record indicates that Respondent Page did provide hundreds of pages of documents, records, and account information to the Accountant, and explained that other records were

---

[9] The Page Respondents correctly point out that while the Petitioners' motion lists Respondents Dagobah, LLC and Page10 Ventures, LLC as part of the Page Respondents in the prefatory text of their motion, there are no allegations or facts specific to those entities in the rest of the Petitioners' motion. (Doc. No. 58 at 7 n.7.) As such, the Court concludes Petitioners have not provided clear and convincing evidence that Respondents Dagobah, LLC and Page10 Ventures, LLC should be held in contempt for violating a specific and definite order of the Court.

not in his possession or control. (Doc. Nos. 58 at 15–20; 59-12.) For some of the items Petitioners broadly assert that he has not provided, such as "any passwords or login account information for any Enjoined Party's separate accounting systems or merchant servicing accounts," (Doc. No. 52 at 10), Respondent Page provides evidence demonstrating that he has actually produced responsive information. (Doc. No. 59-12.)[10] And some of the information demanded by Petitioners, such as "documents or information regarding the Enjoined Parties' ongoing Progenex brand sales activities," does not even appear to be covered by either the general language of the Injunction or the more specific document requests outlined in the Arbitrator's October 6, 2020 order to produce documents. (Doc. No. 52 at 10.) Furthermore, Respondent Page states that new responsive documents regarding the secured debts that led to the foreclosure by Mulligan Capital were recently provided to the Arbitrator. (Doc. Nos. 58 at 17–18; 59-4.) Lastly, the Court notes that Petitioners do not even ask the Court to compel Respondent Page to produce specific documents or information in their requested relief; the remedies sought pertain only to the purported violations of the asset freeze provisions. (Doc. No. 52 at 18–19.)

The Mulligan Parties assert that Arbitrator has no jurisdiction over them. (Doc. No. 68 at 7–8.) But in the Ninth Circuit, a non-party can be liable for contempt where the non-party has actual notice of the order and either (1) aids and abets the enjoined party in violating the court order or (2) is legally identified with him. Peterson v. Highland Music, Inc., 140 F.3d 1313, 1323–24 (9th Cir. 1998) (citing N.L.R.B. v. Sequoia District Council of Carpenters, 568 F.2d 628, 633 (9th Cir. 1977)). In addition to failing to establish an underlying violation of the Injunction, Petitioners' motion does not satisfy their burden of

---

[10] If the Petitioners wish for the Court to use the "potent weapon" of holding a party in contempt for non-compliance with a court order, the burden is on them to provide the Court with detailed, accurate, and clear evidence of the non-compliance, such that the contempt order can identify the actions necessary to bring the contemnor into compliance. See Calvillo Manriquez v. Devos, 411 F. Supp. 3d 535, 539–40 (N.D. Cal. 2019) ("Civil contempt is coercive. . . . [T]he contemnor is able to purge the contempt . . . by committing an affirmative, remedial act." (quoting Int'l Union, United Mine Workers of Am. v. Bagwell, 512 U.S. 821, 828 (1994))). Broad overstatements and generalizations do not satisfy that burden.

clearly and convincingly demonstrating the requirements necessary for a non-party to be held in contempt. Additionally, the Mulligan Parties make a credible showing that they are not parties to the underlying arbitration, that the Arbitrator does not have jurisdiction over them or the validity of the foreclosure, and that the Arbitrator agrees with those positions. (Doc. No. 68 at 7–8.) In sum, the Court denies the Petitioners' motion for an order to show cause why the Page Respondents and the Mulligan Parties should not be held in contempt for violating the document production provisions of the Injunction.

## **Conclusion**

Petitioners have asked this Court to find the Page Respondents and non-parties to the arbitration agreement, the Mulligan Parties, in contempt of a preliminary injunction, but their request is unaccompanied by clear and convincing evidence of a violation of a specific and definite order. Petitioners cannot ask this Court to behave as if the foreclosure in 2019, which occurred prior to the issuance of any injunctive relief, was invalid and illegitimate when there is no evidence in the record that any court or arbiter with proper jurisdiction has found that it was. The validity of the non-judicial foreclosure is before the Utah court, which has jurisdiction over the entities involved in the foreclosure. The Court notes that at the time of the December 2019 foreclosure, the Page Respondents were in possession of an Interim Award that found in their favor other than an equitable adjustment of the ownership interests. (Doc. No. 10-2 Ex. 1 at 3.) Yet the Page Respondents, who – according to the Interim Award issued in February 2019 – the Arbitrator tentatively found did not commit violations of federal and state securities laws or breach their fiduciary duties, are still embroiled in this dispute over two years later.

This arbitration was initiated in 2016, and under the terms of the agreement between the parties, was supposed to produce a final award within ninety (90) days from the initiation of arbitration proceedings. (Doc. No. 38-2 Ex. 11 at 32.) Yet it is still ongoing over five years later and is now on the dockets of three separate forums. The present question is whether Petitioners have produced clear and convincing evidence to hold the Page Respondents and non-parties in contempt. After a review of the entire record and

relevant standards, the Court denies Petitioners' motion for an order to show cause re contempt in its entirety.

**IT IS SO ORDERED.**

DATED: June 4, 2021

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT