**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

BRIAN G. BERLAND, et. al.,

Petitioners,

v.

THE CONCLAVE, LLC, et al.,

Respondents.

Case No.: 20-cv-00922-H-WVG

**ORDER DENYING PETITIONERS' MOTION FOR AN ORDER TO SHOW CAUSE RE CONTEMPT**

[Doc. No. 86.]

On June 21, 2022, Petitioners Brian G. Berland, Laurita Berland, Vincent Berland, Roxane M. Blake, Aaron Bollig, Steve Burns, Troy E. Burns, Michael Carey, Patrick Carey, Michael Carpenter, Sonya Carpenter, Merrill Conant, Ross Edwards, Kevin Fralick, Tom Gawlick, Justin Jones, William Kalahurka, Jeffrey Menzie, Pamela Menzie, Progenex Investment Group, LLC, D. Paul Rittman, David Schmidt, Scott Schneider, Mark Shields,

The Shields Group, LLC, Michael Speer, Dennis Stanley, Gail Stanley, Ronnie Stanley, Randy Staten, Gina Staten, Curtis L. Thomas, Nancy L. Thomas, Carol Thomeczek, William D. Turley, Sheri Turley, Gavin Unruh, Kimberly Unruh, Annetta Vahsholtz, Dennis Vahsholtz, Richard Weiser, Roger Winter, Timothy C. Winter, Jimmy Woodward, Larry Woodward, Mark Zortman, and Anita Zortman (collectively, the "Petitioners") filed a motion requesting that the Court issue an order to show cause why Respondents Dagobah LLC, Page10 Ventures, LLC, and Ryan Page (collectively, the "Page Respondents") and certain non-parties Gravity Brands, LLC ("Gravity"), Mulligan Capital, LLC ("Mulligan Capital"), Matthew Page, Paul Gomez, and Luke Adams (collectively, the "Non-Party Respondents"), should not be held in contempt of Court. (Doc. No. 86.)

On June 22, 2022, Entity Petitioner Neville Holdings Inc. and Third-Party Respondent Cameron N. Verdi, through their counsel, filed a joinder petition in support of Petitioners' motion. (Doc. No. 87.) On September 12, 2022, the Non-Party Respondents filed their opposition to the motion. (Doc. No. 92.) On September 13, 2022, the Page Respondents filed their opposition to the motion. (Doc. No. 93.) On September 20, 2022, Petitioners filed a reply in support of the motion. (Doc. No. 94.) On October 31, 2022, the Court held a hearing on the motion. Thomas Frost appeared for the Petitioners, Ryan Bell appeared for the Page Respondents, and William Cole appeared for the Non-Party Respondents. For the reasons that follow, the Court denies the Petitioners' request for an order to show cause re contempt.

## Background

The factual background of this lengthy arbitration dispute is laid out in this Court's prior orders. (Doc. Nos. 48, 73.) Petitioners are a group of passive investors in the Progenex enterprise that filed a demand for arbitration regarding various federal and state law securities claims as well as breach of fiduciary duty and corporate waste. (Doc. No. 10-2 Ex. 1 at 2–3.) Respondents are a group of management and holding companies and their principals who managed the enterprise of Progenex Holdings, LLC ("Progenex"). (Doc. No. 48 at 3.) Gravity, Mulligan Capital, Matthew Page, Paul Gomez, and Luke

Adams are not parties to the arbitration. (Doc. No. 34-1 Ex. 1 at 5-6.)

Petitioners initiated the underlying arbitration before JAMS on January 27, 2016. (Id. at 2.) The arbitration agreement required that "[t]he award shall be made within ninety (90) days from the date the arbitration proceedings are initiated." (Doc. No. 38-2 Ex. 11 at 32.) The arbitration was held March 19–23, 2018. (Id.) On February 4, 2019, the Arbitrator issued an Interim Award, which found that the Petitioners had "failed to prove their federal and state securities law claims . . . dilution, and breach of fiduciary duty/corporate waste claims against Respondents." (Doc. No. 10-2 Ex. 1 at 3.) But the Interim Award also provided that the Arbitrator intended to exercise her equitable authority and order the adjustment of ownership interests in Progenex in her final award. (Id.) On July 31, 2019, the Arbitrator reopened the arbitration hearings to review allegedly new material evidence. (Doc. No. 23-2 Ex. A at 1.)

In December 2019, various individuals who had made secured loans to Matrix Solutions, LLC ("Matrix Solutions") – one of the companies involved in the Progenex enterprise – notified Respondent Ryan Page that they intended to exercise their right to foreclose on the company given their unpaid debts. (Doc. Nos. 59-5 March 2, 2020 Page Decl. ¶¶ 63–68; 59-8 April 21, 2021 Page Decl. ¶ 44.) The group of foreclosing lenders claimed to be owed $4,200,000 in the aggregate. (Doc. Nos. 34-1 Ex. 3 at 3; 59-5 March 2, 2020 Page Decl. ¶¶ 12–30.) On December 30, 2019, a foreclosure auction was held; no parties other than Mulligan Capital bid on Matrix Solutions. (Doc. No. 59-5 March 2, 2020 Page Decl. ¶¶ 106–07.) As a result of the foreclosure, Mulligan Capital acquired all of Matrix Solutions' property, intellectual property, and assets, which included the property, intellectual property, and assets of Progenex pursuant to an agreement between the two entities. (Doc. Nos. 59-6 June 5, 2020 Page Decl. ¶¶ 6, 12; 59-8 April 21, 2021 Page Decl. ¶¶ 18–19.)

On January 27, 2020, upon learning of the foreclosure, the Arbitrator issued a Temporary Restraining Order ("TRO") enjoining the transfer or assignment of any Progenex assets or completing or facilitating any transfer of assets pursuant to the non-

judicial foreclosure. (Doc. No. 34-1 Ex. 2 at 6.) But Petitioners did not file a motion requesting for the Court to issue an order confirming the TRO until May 21, 2020. (Doc. No. 1.) On July 27, 2020, the Court denied the motion to confirm the TRO noting several deficiencies with the application. (Doc. No. 19.) On July 20, 2020, Mulligan Capital and several of its members filed suit in the Third District Court for the State of Utah seeking a declaratory ruling that the foreclosure of the assets and property of Matrix Solutions and Progenex Holdings by Mulligan Capital was valid and final (the "Utah Action"). (Doc. No. 62-4 Ex. 3.) The parties have not provided the Court with any recent developments in the Utah Action, which is still ongoing.

On November 9, 2020, the Arbitrator granted a preliminary injunction. (Doc. No. 34-1 Ex. 1.) Petitioners moved to confirm the preliminary injunction on November 12, 2020. (Doc. No. 34.) Following briefing, on February 9, 2021, the Court granted the Petitioners' motion to confirm the Preliminary Injunction as an Order of the Court (the "Preliminary Injunction"). (Doc. No. 48.) The Preliminary Injunction restrained and enjoined Respondents The Conclave, LLC, Progenex Holdings, LLC, Riverpine, LLC, Dagobah, LLC, Page10 Ventures, LLC, Ryan Page, Steve Shamion, and their principals, assigns, affiliates, successors, or anyone acting at or under Respondents' discretion or in concert with them (collectively, the "Enjoined Parties") from the following acts:

1. Directly or indirectly transferring, setting off, changing, selling, pledging, assigning, liquidating, hiding, secreting, or otherwise disposing of, or withdrawing, conveying, assigning and/or otherwise moving any property or assets owned and/or licensed by Progenex of any type whatsoever, specifically including, without limitation, the Progenex brand trademark and any other intellectual property utilized in any fashion in connection with any of the businesses engaged in by Progenex, its principals, assigns, affiliates, and or successors;

2. Completing or facilitating in any manner any transfer of assets of Progenex pursuant to the December 2019 non-judicial foreclosure of the assets of MATRIX SOLUTIONS, LLC;

3. Failing and refusing to provide full and complete access to any or all financial information, bank accounts, business agreements, and Progenex-related financial correspondence, emails, texts, or other documentation to the

        independent expert accountant, Tony Yip (the "Accountant'), appointed by the Arbitrator to complete an accounting of the Progenex enterprise;

4. Failing and refusing to timely cooperate with the reasonable requests for information by the Accountant;

5. Failing and refusing to provide all passwords, login, and account information, and records to the Accountant of the accounting program(s) utilized by and for Progenex or any Enjoined Parties' separate accounting systems related to or concerning the Progenex enterprise, including all subsidiary accountings;

6. Failing and refusing to provide to the Accountant all passwords and login account information and records for any merchant servicing account(s) utilized by and for the Progenex or any Enjoined Parties' separate merchant sales related to or concerning the Progenex enterprise, including all subsidiary sales and transactions.

(Doc. No. 34-1 Ex. 1 at 8–9.)

Following the Court's order confirming the Preliminary Injunction, the Petitioners, on April 27, 2021, filed their first motion for an order to show cause why the Page Respondents and certain non-parties should not be held in contempt of court. (Doc. No. 52.) The Petitioners alleged that the Page Respondents and the non-party respondents violated (i) the asset freeze provisions of the Preliminary Injunction, and (ii) the document production provisions of the Preliminary Injunction. (Id.) On June 4, 2021, the Court issued an order denying the Petitioners first motion for an order to show cause re contempt in its entirety. (Doc. No. 73.)

On June 24, 2021, the Page Respondents filed a motion to vacate the Arbitrator's appointment of Ronnie Stanley as provisional manager of Progenex Holdings, LLC. (Doc. No. 74.) The Court stated that it is not the role of district courts to provide appellate review of every individual order issued during an arbitration and denied the Page Respondent's motion. (Doc No. 84.)

On September 30, 2022, over four years after the arbitration was held, the Arbitrator issued a Final Award. (Doc. No. 97-1.) Following the language of the Interim Award, the Final Award similarly found that the Petitioners had "failed to prove their federal and state securities law claims . . . dilution, and breach of fiduciary duty/corporate waste claims

against Respondents." (Doc. No. 97-1 at 6.) The Final Award also set forth the capitalization table of Progenex, suspended and held the interests of Conclave and its members in Progenex in abeyance,[1] and continued the tenure of Ronnie Stanley as Progenex's manager. (Doc. No. 97-1 at 33.)

Additionally, the Arbitrator continued and turned the Preliminary Injunction into a Permanent Injunction (the "Permanent Injunction") and incorporated it as part of the Final Award.[2] (Doc. No. 97-1 Ex. B.) The Permanent Injunction's terms largely mirror the Preliminary Injunction's terms, with a few minor changes. (Id.) Specifically, the Permanent Injunction restrained and enjoined the Enjoined Parties from the following acts:

1. Directly or indirectly transferring, setting off, changing, selling, pledging, assigning, liquidating, hiding, secreting, or otherwise disposing of, or withdrawing, conveying, assigning and/or otherwise moving any property or assets owned and/or licensed by Progenex of any type whatsoever, specifically including, without limitation, the "Progenex" brand trademark and any other intellectual property utilized in any fashion in connection with any of the businesses engaged in by Progenex, its principals, assigns, affiliates, and or successors;

2. Completing or facilitating in any manner any transfer of assets of Progenex pursuant to the December 2019 non-judicial foreclosure of the assets of MATRIX SOLUTIONS, LLC;

3. Failing and refusing to provide full and complete access to any or all financial information, bank accounts, business agreements, and Progenex-related financial correspondence, emails, texts, or other documentation to facilitate an accounting of the Progenex Entities[3];

4. Failing and refusing to timely cooperate with the reasonable requests for such

[1] The Arbitrator stated that the interests shall be held in abeyance "until there is a judicial determination as to whether Conclave and its embers shall be dissociated with or expelled from membership in Progenex." (Doc. No. 97-1 at 33.)

[2] The Arbitrator held that the Permanent Injunction "shall be dissolved upon the issuance of a final judgment in the Mulligan Utah Action or by another court of competent jurisdiction or upon resolution by settlement of the new claims related to acts and omissions of Ryan Page and Mulligan and its members commencing in or about December 2019 . . . including the Mulligan nonjudicial foreclosure of the Matrix assets and indirectly the Progenex assets." (Doc. No. 97-1 at 33.)

[3] The Arbitrator defines the "Progenex Entities" as Progenex Holdings, LLC, the Conclave LLC, and Matrix Solutions LLC. (Doc. No. 97-1 Ex. B at 5.)

        information;

5. Failing and refusing to provide all requested passwords, login, and account information, and records of the accounting program(s) utilized by and for the Progenex Entities or any Enjoined Parties' separate accounting systems related to or concerning the Progenex Entities, including all subsidiary accountings;

6. Failing and refusing to provide to all requested passwords and login account information and records for any merchant servicing account(s) utilized by and for the Progenex Entities or any Enjoined Parties' separate merchant sales related to or concerning the Progenex enterprise, including all subsidiary sales and transactions.

(Doc. No. 97-1 Ex. B at 9.)

    The Court notes that the parties have not yet moved to confirm the Final Award, including the Permanent Injunction. The parties may submit papers to the Court to confirm it in accordance with the Local Rules.

    By the present motion, Petitioners request that the Court issue an order to show cause why Respondents Ryan Page, Dagobah LLC, and Page10 Ventures, as well as non-parties Gravity Brands, LLC, Mulligan Capital, LLC, Matthew Page, Paul Gomez, and Luke Adams should not be held in contempt of Court for (i) allegedly violating the asset freeze provisions of the Court's injunction and (ii) for allegedly concealing material evidence from the Court. (Doc. No. 86.) The Page Respondents maintain that this Court should not hold them in contempt because the conduct Petitioners object to does not constitute an asset transfer and because they have not transferred any assets or property of Progenex since the December 2019 foreclosure and have not otherwise violated the Preliminary Injunction. (Doc. No. 93.) The Non-Party Respondents similarly maintain that the conduct Petitioners object to does not violate the Court's Preliminary Injunction and that even if the Court found that the conduct did violate the Preliminary Injunction, the Court should not hold them in contempt because the Petitioners have not provided evidence that they were acting in concert with the Enjoined Parties. (Doc. No. 92.)

///

///

**Legal Standards**

A district court has the inherent power to enforce its orders through civil contempt. See Shillitani v. United States, 384 U.S. 364, 370 (1966); Cal. Dep't of Soc. Servs. v. Leavitt, 523 F.3d 1025, 1033 (9th Cir. 2008). "Civil contempt . . . consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply." Inst. of Cetacean Rsch. v. Sea Shepherd Conservation Soc'y, 774 F.3d 935, 945 (9th Cir. 2014) (citing In re Dual-Deck Video Cassette Recorder Antitrust Litig., 10 F.3d 693, 695 (9th Cir. 1993)).

To establish a prima facie case for civil contempt, "[t]he moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court." F.T.C. v. Affordable Media, 179 F.3d 1228, 1239 (9th Cir. 1999) (citing Stone v. City and Cty. of San Francisco, 968 F.2d 850, 856 n.9 (9th Cir. 1992)). Clear and convincing evidence requires "more than proof by a preponderance of the evidence and less than proof beyond a reasonable doubt." Singh v. Holder, 649 F.3d 1161, 1168 (9th Cir. 2011). Evidence may only be considered "clear and convincing" if it demonstrates that the factual contentions are "highly probable." Sophanthavong v. Palmateer, 378 F.3d 859, 866 (9th Cir. 2004). "The contempt need not be willful." In re Dual-Deck, 10 F.3d at 695 (internal quotation marks and citation omitted). "Contempt sanctions, however, are not warranted where the nonmoving party's action 'appears to be based on a good faith and reasonable interpretation' of the court's order." Newmark Realty Capital, Inc. v. BGC Partners, Inc., No. 16-cv-01702-BLF, 2018 WL 2416242, at *2 (N.D. Cal, May 29, 2018) (quoting In re Dual-Deck, 10 F.3d at 695).

If the Court finds a prima facie case of civil contempt, the burden shifts to the alleged contemnor to demonstrate that it took all reasonable steps to comply yet was unable. Stone, 968 F.2d at 856 n.9. "A party's inability to comply with a judicial order constitutes a defense to a charge of civil contempt." Affordable Media, 179 F.3d at 1239; see U.S. v. Rylander, 460 U.S. 752, 757 (1983) ("While the court is bound by the enforcement order, it will not be blind to evidence that compliance is now factually impossible. Where

compliance is impossible, neither the moving party nor the court has any reason to proceed with the civil contempt action."). "[T]he party asserting the impossibility defense must show 'categorically and in detail' why he is unable to comply." Id. (citing N.L.R.B. v. Trans Ocean Export Packing, Inc., 473 F.2d 612, 616 (9th Cir. 1973)); see Rylander, 460 U.S. at 757 ("It is settled, however, that in raising this defense, the defendant has a burden of production."). Substantial compliance also is a defense to civil contempt—"[i]f a violating party has taken 'all reasonable steps' to comply with the court order, technical or inadvertent violations of the order will not support a finding of civil contempt." Gen. Signal Corp. v. Donallco, Inc., 787 F.2d 1376, 1379 (9th Cir. 1986); see Inst. of Cetacean Rsch., 774 F.3d at 945.

In contempt proceedings, the propriety of the underlying order is not at issue; rather, the question for the Court is whether the alleged contemnor has the present ability to obey the Court's order. See Maggio v. Zeitz, 333 U.S. 56, 69 (1948). "[A] contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed and thus become a retrial of the original controversy." Id.; Rylander, 460 U.S. at 756–57.

## Discussion

### I. Whether Petitioners Have Shown By Clear and Convincing Evidence That The Page Respondents and/or the Non-Party Respondents Violated The Preliminary Injunction's Asset Freeze Provisions

"Arbitration awards are not self-enforcing. Rather, they must be given force and effect by being converted to judicial orders by courts." Aguilar v. Carter's Inc., No. 1:19-CV-03178-SMJ, 2020 WL 7974335, at *1 (E.D. Wash. Nov. 17, 2020). The Preliminary Injunction contains two "asset freeze" provisions, which enjoin: (1) transferring or otherwise moving "any property or assets owned and/or licensed by Progenex [Holdings, LLC][4] of any type whatsoever," (the "General Asset Freeze" provision), and

[4] (See Doc. No. 34-1 Ex. 1, Arbitrator's Preliminary Injunction, at 3 (abbreviating "Progenex Holdings LLC" as "Progenex").)

(2) "completing or facilitating in any manner any transfer of assets of Progenex [Holdings, LLC] pursuant to the December 2019 non-judicial foreclosure of the assets of Matrix Solutions, LLC" (the "Foreclosure Freeze" provision). (Doc. No. 34-1 Ex. 1 at 9.)

Petitioners contend that the Page Respondents and the Non-Party Respondents have violated the General Asset Freeze and the Foreclosure Freeze provisions by filing petitions with the U.S. Patent and Trademark Office ("USPTO") regarding the registered ownership of the Progenex trademarks. (Doc No. 86 at 14–15.) The Court considers the entire record and the following exhibits[5]: a July 29, 2022 petition letter to the director of the USPTO, an August 3, 2021 petition to the USPTO, an August 9, 2021 USPTO inquiry letter, an August 30, 2021 response to the inquiry letter, and a January 22, 2022 granting of the petition (collectively, the "August 2021 USPTO Action"). (Doc. No. 86-2 Exs. B, C, D, F, G.)

The August 2021 USPTO Action is a continuation of the dispute over the Progenex trademarks discussed in the Court's prior contempt order. (Doc. No. 73 at 9–10.) The USPTO records show that on December 30, 2019, the Progenex trademarks were assigned from Progenex to Matrix Solutions and then from Matrix Solutions to Mulligan Capital. (Doc. No. 59-7 Ex. 1.) On March 30, 2020, the assignments from Progenex to Matrix Solutions and then Matrix Solutions to Mulligan Capital were registered with the USPTO. (Id.)

On October 14, 2020, Third-Party Respondent Cameron Verdi filed a correction by declaration of incorrect filing with the USPTO. (Doc. No. 86-2 Ex. B.) Cameron Verdi filed the correction to "reflect that Progenex Holdings LLC always was, and remains, the duly registered owner of all Progenex trademarks." (Doc. No. 44-1 at 2.) As a result, the

---

[5] The Court's review is limited to whether the conduct after the Court's February 9, 2021 Injunction constitutes contempt. See Arkwright Advanced Coating, Inc. v. MJ Sols. GmbH, No. CIV. 14-5030 DSD/TNL, 2015 WL 5602840, at *1 (D. Minn. Sept. 23, 2015) (noting that the "arbitration award at issue is not a court order and, as such, cannot serve as the basis for a contempt order"); Donel Corp. v. Kosher Overseers Ass'n of Am., Inc., No. 92–8377, 2001 WL 1135625, at *1 (S.D.N.Y. Sept. 26, 2001) (finding no contempt based on conduct occurring after the arbitration award, but before the court confirmed that award, because the award was "not enforceable until it was confirmed by [the] Court").

USPTO changed the Progenex trademarks' ownership registration back to Progenex Holdings. (Doc. No. 44-2 Ex. C.)

In response, Gravity, a non-party to the arbitration, filed a petition on August 3, 2021 requesting that the USPTO: (1) remove Cameron Verdi's October 14, 2020 filing, and (2) list Gravity as the registered owner of the Progenex trademarks pursuant to the December 31, 2019 assignment from Mulligan Capital to Gravity. (Doc Nos. 86-2 Exs. C, D; 92 at 5.) After Gravity responded to the USPTO clarifying an error in the initial petition,[6] the USPTO issued a letter granting Gravity's petition. (Doc No. 86-2 Ex. B.) The USPTO stated that Verdi's filing "will be considered as unauthorized" and that the Progenex trademarks' ownership information "will be updated to show the current owner as the petitioner, Gravity Brands LLC." (Id.)

Petitioners argue that by initiating and completing the August 2021 USPTO Action the "Enjoined Parties[7] caused Progenex to transfer all Progenex trademarks to Gravity in January 2022" and thereby violated both the General Asset Freeze and the Foreclosure Freeze provisions of the Preliminary Injunction. (Doc No. 86 at 15.) Petitioners overstate the record.

As the Court indicated in its previous order on Petitioners' first motion for an order to show cause re contempt, the evidence in the record shows that in December 2019 the entirety of Progenex's assets and property were transferred to Mulligan Capital via a non-judicial foreclosure of Matrix Solutions.[8] (Doc. Nos. 59-6 June 5, 2020 Page Decl. ¶ 6;

---

[6] On August 9, 2021, the USPTO issued an inquiry letter to Gravity seeking clarification as to the trademarks' owner because Gravity had listed Mulligan Capital as the owner in its August 3, 2021 petition, not Gravity. (Doc No. 86-2 Exs. C, F.) On August 30, 2021, Gravity responded to the USPTO's letter and indicated that they had made an error and that Gravity was the owner. (Doc No. 86-2 Ex. G.)

[7] Petitioners define the "Enjoined Parties" as both the Page Respondents and the Non-Party Respondents. (Doc. No. 86 at 1.)

[8] According to Ryan Page's declarations and the complaint in the Utah Action, there was a security agreement between Progenex Holdings and Matrix Solutions, whereby Matrix Solutions made several loans to Progenex Holdings, and secured its loans with Progenex Holdings' assets, including its trademarks and websites. (Doc. Nos. 59-5 March 2, 2020 Page Decl. ¶ 31; 59-8 April 21, 2021 Page Decl. ¶ 18; 62-4 Ex. 3 ¶¶ 9–18.) Thus, at the time of the foreclosure, Matrix Solutions obtained all of Progenex

59-8 April 21, 2021 Page Decl. ¶¶ 4–11, 23; 73 at 9.)  The Page Respondents and Non-Party Respondents now provide that an additional assignment occurred on December 31, 2019, whereby Mulligan Capital assigned the Progenex trademarks to Gravity.  (Doc Nos. 92 at 4; 93 at 9; 93-5 Ex. A.)  On December 14, 2020, the assignment from Mulligan Capital to Gravity was registered with the USPTO.  (Doc. Nos. 92 at 4; 93-5 Ex. A.)

The assignment from Mulligan Capital to Gravity occurred in December 2019, before the Arbitrator issued a TRO and well before the Court confirmed the Preliminary Injunction.  The August 2021 USPTO Action documents that assignment.  The August 2021 USPTO Action therefore could not have "caused Progenex to transfer all Progenex trademarks to Gravity" as Petitioners suggest because that had already occurred years prior.  Additionally, the USPTO's January 22, 2022 letter describes the authority of its assignment branch as "record[ing] assignments and security interests of registered trademarks."  (Doc No. 86-2 Ex. B at 4.)  Such "[r]ecordation is a ministerial function. The office neither makes a determination of the legality of the transaction nor the right of the submitting party to take the action."  Transferring Ownership/Assignments FAQs, USPTO, https://www.uspto.gov/learning-and-resources/transferring-ownership-assignments-faqs#type-browse-faqs_160521 (last visited Oct. 31, 2022).  Petitioners' allegations concerning the August 2021 USPTO Action are far from satisfying the clear and convincing evidence standard required for a contempt order.

The Court notes that the Utah Action has jurisdiction over many of the relevant entities involved in the 2019 foreclosure.  Discovery is ongoing in the Utah Action, which provides the parties with an avenue to obtain information not disclosed here or in the arbitration.

Under the present record, the Court concludes Petitioners have not met their burden

---

Holdings' assets, and then Mulligan Capital obtained all of Matrix Solutions' assets. (Doc. Nos. 59-6 June 5, 2020 Page Decl. ¶ 6; 59-8 April 21, 2021 Page Decl. ¶¶ 4–11.)  Petitioners have not presented any evidence that this non-judicial foreclosure has been held to be legally invalid by a court of competent jurisdiction.

of showing by clear and convincing evidence that the August 2021 USPTO Action violates a specific and definite order of this Court. See Affordable Media, 179 F.3d at 1239. As a result, the Court denies Petitioners' motion for an order to show cause why the Page Respondents and the Non-Party Respondents should not be held in contempt for purportedly violating the asset freeze provisions of the Preliminary Injunction.[9]

**II. Whether Petitioners Have Shown By Clear and Convincing Evidence That The Page Respondents and/or the Non-Party Respondents Violated The Injunction By Concealing Material Evidence From The Court**

Petitioners also argue that the Page Respondents and the Non-Party Respondents violated the Preliminary Injunction by concealing material evidence from the Court, specifically, the entity Gravity. (Doc No. 86 at 2, 10–11.) Petitioners argue that this concealment "violated the prohibitions set forth in ¶¶ 1-2 of the [Preliminary] Injunction" or, in other words, the asset freeze provisions of the Preliminary Injunction. (Doc. No. 86 at 2.) Petitioners fail to show by clear and convincing evidence how the parties to the arbitration violated the asset freeze provisions of the Preliminary Injunction or that they directed or acted in concert with any of the Non-Party Respondents to do so. (See Doc Nos. 86, 94.)[10] Further, no provision of the Preliminary Injunction covers the Page Respondents' and Non-Party Respondents' alleged non-disclosure to the Court. (See Doc. No. 34-1 Ex. 1 at 8–9.) Accordingly, the Court denies the Petitioners' motion for an order to show cause why the Page Respondents and the Non-Party Respondents should not be held in contempt.

---

9 The Court need not delve into which, if any, of the Page Respondents or the Non-Party Respondents were (or could even be held) responsible for the August 2021 USPTO Action because Petitioners have not met their burden of proving by clear and convincing evidence that the August 2021 USPTO Action involved the transferring or otherwise moving of "property or assets owned and/or licensed by Progenex [Holdings, LLC]" or the "completing or facilitating in any manner any transfer of assets of Progenex."

10 Petitioners argue that Ryan Page's declarations to the arbitrator are evidence of a violation of the Preliminary Injunction. (Doc No. 86 at 10–11.) Ryan Page's declarations, which contain numerous caveats and qualifiers, do not rise to the level of clear and convincing evidence needed for a contempt order.

**Conclusion**

Petitioners have asked this Court to find the Page Respondents and Non-Party Respondents in contempt of the Preliminary Injunction. Petitioners' request, however, does not provide clear and convincing evidence of a violation of the Preliminary Injunction. After a review of the entire record and relevant standards, the Court denies Petitioners' motion for an order to show cause re contempt in its entirety.

**IT IS SO ORDERED.**

DATED: October 31, 2022

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT