1
2
3
4
5          **UNITED STATES DISTRICT COURT**
6          **SOUTHERN DISTRICT OF CALIFORNIA**
7

8  BRIAN G. BERLAND, et. al.,                    Case No.: 20-cv-00922-H-WVG
9                              Petitioners,       **ORDER:**
10 v.
11 THE CONCLAVE, LLC, et al.,                     **(1) DENYING PAGE**
                                                  **RESPONDENTS' MOTION TO**
12                          Respondents.           **CONFIRM, IN PART, AND**
                                                  **VACATE, IN PART, FINAL**
13                                                **ARBITRAL AWARD; AND**
14
15                                                [Doc. No. 105]
16                                                **(2) GRANTING PROGENEX'S**
                                                  **CROSS-MOTION TO CONFIRM**
17                                                **FINAL ARBITRAL AWARD**
18
19                                                [Doc. No. 112.]
20

21
22         On December 29, 2022, Respondents Dagobah LLC, Page10 Ventures, LLC, and
23 Ryan Page (the "Page Respondents") filed a motion requesting that the Court confirm, in
24 part, and vacate, in part, a final award issued in arbitration on September 30, 2022 (the
25 "Final Award") against Petitioners Brian G. Berland, Laurita Berland, Vincent Berland,
26 Roxane M. Blake, Aaron Bollig, Steve Burns, Troy E. Burns, Michael Carey, Patrick
27 Carey, Michael Carpenter, Sonya Carpenter, Merrill Conant, Ross Edwards, Kevin Fralick,
28 Tom Gawlick, Justin Jones, William Kalahurka, Jeffrey Menzie, Pamela Menzie, Progenex

Investment Group, LLC, D. Paul Rittman, David Schmidt, Scott Schneider, Mark Shields, The Shields Group, LLC, Michael Speer, Dennis Stanley, Gail Stanley, Ronnie Stanley, Randy Staten, Gina Staten, Curtis L. Thomas, Nancy L. Thomas, Carol Thomeczek, William D. Turley, Sheri Turley, Gavin Unruh, Kimberly Unruh, Annetta Vahsholtz, Dennis Vahsholtz, Richard Weiser, Roger Winter, Timothy C. Winter, Jimmy Woodward, Larry Woodward, Mark Zortman, and Anita Zortman ("Petitioners").  (Doc. No. 105 ("Page Respondents' Motion").) On January 30, 2023, Respondent Progenex Holdings, LLC ("Progenex") filed an opposition to the Page Respondents' Motion and cross-moved the Court to confirm the Final Award.  (Doc. No. 112 ("Progenex's Cross-Motion").)  On January 30, 2023, Third-Party Respondent Cameron N. Verdi ("Verdi") filed an opposition to the Page Respondents' Motion and a response in support of Progenex's Cross-Motion. (Doc. No. 113.)  On January 31, 2023, Petitioners filed a joinder in support of Progenex's Cross-Motion. (Doc. No. 114.) On February 17, 2023, the Page Respondents filed a consolidated opposition to Progenex's Cross-Motion and a reply in support of their motion to confirm, in part, and vacate, in part, the Final Award.  (Doc. No. 118.)  On March 2, 2023, Progenex filed a reply in support of its cross-motion to confirm the Final Award. (Doc. No. 123.)

The Court, pursuant to its discretion under Local Rule 7.1(d)(1), determines that the motions are fit for resolution without oral argument and submits the motions on the parties' papers.  (Doc. No. 121.)   For the reasons that follow, the Court denies the Page Respondents' Motion and grants Progenex's Cross-Motion.

## I.    BACKGROUND

These motions stem from an arbitration between the parties related to the Progenex enterprise. (Doc. No. 10-2 Ex. 1 at 3.)  The Page Respondents are a group of management and holding companies and their principals who managed the Progenex enterprise.  (Doc. No. 34 at 2.)  Until his July 15, 2020 resignation, Respondent Ryan Page was the manager of Progenex.  (Doc. No. 34-1 Ex. 1 at 6.)  Petitioners are a group of passive investors in the Progenex enterprise that filed a demand for arbitration regarding various federal and state

law securities claims, breach of fiduciary duty/corporate waste, and wrongful dilution. (Doc. No. 10-2 Ex. 1 at 2–3.)

### A.    The Arbitration Agreement

Petitioners initiated the arbitration pursuant to the First Amended and Restated Operating Agreement of Mercury Ventures LLC, a Wyoming limited liability company (the "Agreement"). (Doc. No. 106-3 Ex. C at 32.) The Agreement provides for "binding arbitration by a Judicial Arbitration and Mediation Service ("JAMS") arbitrator."  (Id.) The Agreement thereby incorporates the JAMS Comprehensive Arbitration Rules and Procedures (the "JAMS Rules").  The JAMS Rules allow the Arbitrator to grant "any remedy or relief that is just and equitable and within the scope of the Parties Agreement, including, but not limited to, specific performance of a contract or any other equitable or legal remedy." JAMS Rule 24(c).  The Agreement also requires that "[t]he award shall be made within ninety (90) days from the date the arbitration proceedings are initiated." (Id. at 32.)

The parties submitted a Joint First Amended Statement of Claims that became the operative pleading in the arbitration.  (Doc. No. 106-7 Ex. G.)  In it, the claimants–the Petitioners in the present case–brought several causes of actions and requested, among other things:

> "a temporary restraining order, preliminary injunction, and permanent injunction immediately removing Page (and Shamion and Luke Adams and Paul Gomez) from any and all positions as Managers in the Progenex organization, appointing independent replacement Co-Managers, and restraining Respondents from using, selling, transferring, hypothecating or otherwise dissipating or disposing of the funds and assets transferred to them."

(Id. at 91-92.)

### B.    The Initial Proceedings and Interim Award

Petitioners initiated the underlying arbitration before JAMS on January 27, 2016. (Doc. No. 106-23 Ex. W at 2.) The Arbitrator held the arbitration hearing in March 2018. (Id.) On February 4, 2019, the Arbitrator issued an Interim Award.  (Id. at 28.)  In the

Interim Award, the Arbitrator found that the Petitioners "have failed to prove their [i] federal and state securities law claims . . ., [ii] dilution, and [iii] breach of fiduciary duty/corporate waste claims against Respondents" (the "Original Claims"). (Id. at 3.)

The Arbitrator also concluded that "while the dilution transactions were legally permissible and valid, the degree to which the passive investors were diluted . . . was inequitable." (Id. at 22.) "[T]o ameliorate the extent of the dilution of the Passive Investor [Petitioners]' shareholder interests in Progenex," the Arbitrator "exercise[d] her equitable authority," and ordered the adjustment of ownership interests in Progenex. (Id. at 3.) The Arbitrator ordered the Petitioners' percentage interest in Progenex to be increased "51% on a pro rata basis," which would be derived from a reduction in the interests of Aaron Thomas ("Thomas"), Verdi, River Pine LLC, and Conclave members. (Id. at 26–27.)

The Arbitrator also provided that Petitioners "failed to establish that Respondents have engaged in legally actionable conduct justifying the removal of Ryan Page from his position as manager of Progenex." (Id.) To conclude, the Interim Award stated that "[e]xcept as otherwise provided herein, all claims, counter-claims, and affirmative defenses asserted by or between any parties hereto are hereby dismissed with prejudice." (Id. at 28.)

## C.    Order Reopening Arbitration Hearing

On July 31, 2019, the Arbitrator entered an Order Reopening the Arbitration Hearing to review allegedly new material evidence. (Doc. No. 23-2 Ex. A at 1.) The Arbitrator specified that the hearing was being reopened "for limited purposes and for a narrowly limited period of time," and noted that the "Arbitration has been a very protracted and difficult one . . . and it must be brought to conclusion without further unnecessary delay." (Id. at 1–2.) The Petitioners and Verdi submitted voluminous exhibits containing new evidence and the parties filed briefing regarding it. (Doc. No. 34-1 Ex. 1 at 4.)

In December 2019, the Arbitrator reviewed the new evidence. (Id.) On December 20, 2019, Petitioners alerted the Arbitrator of certain "urgent developments related to the Progenex business which likely would affect the status quo of the parties and/or conservation of property and assets" related to the underlying arbitration. (Id.) Respondent

Ryan Page had (1) terminated the counsel for the Progenex enterprises in various third-party litigations, resulting in default judgments, and (2) issued a multi-million dollar capital call to the shareholders of Progenex, including Petitioners.  (Id.)

On January 13, 2020, the Page Respondents' counsel notified the Arbitrator of a public auction that occurred on December 30, 2019.  (Id. at 5.)  At the public auction, Mulligan Partners LLC ("Mulligan") became the successful credit bidder.  (Id.)  Mulligan is a third-party entity formed by a brother of Ryan Page in December 2019.  (Id.)  Mulligan's successful bid resulted in Mulligan's non-judicial foreclosure over the Progenex assets and intellectual property (the "Foreclosure Event").  (Id.)  Mulligan held the beneficial interest of the foreclosure loans, around $4,200,000, at the time of the Foreclosure Event.  (Id.)  An undisclosed third party purchased the assets of Progenex and its principal operating entity, Matrix Solutions, LLC ("Matrix"), for an undisclosed amount.  (Id.)

### D.    The Temporary Restraining Order and Accounting Orders

On January 24, 2020, Petitioners filed an Emergency Equitable Motion seeking a receivership and other relief as a result of the Foreclosure Event and other developments. (Doc. No. 1-3 Ex. 1 at 5.)  On January 27, 2020, the Arbitrator issued a Temporary Restraining Order ("TRO") finding that the Final Award "may be rendered ineffectual without the issuance of this Order enjoining the transfer or assignment of any Progenex assets" until "such a time that the Arbitrator is able to hear evidence based on a full and complete accounting of the Progenex enterprise and to determine whether the non-judicial foreclosure" was proper.  (Id.)  On May 21, 2020, Petitioners filed a motion requesting that this Court confirm the TRO issued by the Arbitrator.  (Doc. No. 1.)  On July 27, 2020, during a hearing with the parties, the Court denied without prejudice the motion to confirm the TRO.  (Doc. Nos. 19, 20.)  The Court noted that the Arbitrator's TRO lacked findings of fact and conclusions of law, did not sufficiently address the standards for issuance of a temporary restraining order, and had been issued several months prior. (Doc. No. 20 at 4–5, 13–15.)

On July 14, 2020, the Arbitrator issued an Order for Appointment of Independent Expert and for an Accounting. (Doc. No. 34-1 Ex. 3.) The Arbitrator appointed Mr. Tony Yip of Torrey Partners, LLP as the independent expert. (Id.) The Arbitrator ordered a complete forensic accounting of the Foreclosure Event and its preceding transactions as well as of the current ownership of Progenex's assets, property, debts, etc. (Id. Ex. 3 at 3.) On October 6, 2020, the Arbitrator issued an Order compelling Respondent Ryan Page to produce documents to Mr. Yip by October 20, 2020. (Id. Ex. 4.) Respondent Ryan Page did not provide the documents and instead submitted various objections to the order. (Id. Ex. 1 at 7.) The Arbitrator indicated that the documents were not provided. (Doc. No. 97-1 Ex. A at 30.)

### E.   Utah Action

On July 20, 2020, Mulligan and several of its members filed suit in the Third District Court for the State of Utah seeking a declaratory ruling that the Foreclosure Event was valid and final (the "Utah Action"). (Doc. No. 62-4 Ex. 3.) Progenex also filed claims in the Utah Action arising out of the Foreclosure Event. (Doc. No. 112 at 3.) These claims include breach of fiduciary duty and fraudulent conveyance against Respondent Ryan Page, and claims of aiding and abetting breach of fiduciary duty and fraudulent conveyance against Luke Adams, Paul Gomez, Matthew Page, as well as other members of Mulligan. (Id.) On January 18, 2023, Progenex filed a motion to stay the Utah Action pending the outcome of the Page Respondents' Motion and Progenex's Cross-Motion. (Id.)

### F.   The Preliminary Injunction

On August 20, 2020, Petitioners moved the Arbitrator to convert the January 27, 2020 TRO into a preliminary injunction. (Doc. No. 30 at 2.) On November 9, 2020, the Arbitrator issued an Order Granting Preliminary Injunction (the "Preliminary Injunction"). (Doc. No. 34-1 Ex. 1.) The Arbitrator made findings to support the Preliminary Injunction. Specifically, the Arbitrator found:

> The Arbitrator finds that any full and complete Final Award to which the [Petitioners] are entitled may be rendered ineffectual without the issuance of this

Preliminary Injunction, enjoining Respondents from a transfer or assignment of any asset of Progenex Holdings LLC ("Progenex"), including but not limited to the Progenex brand intellectual property, until such time as the Arbitrator is able to: (i) review and consider evidence based on a proper accounting of the Progenex; (ii) determine whether the December 30, 2019 non-judicial foreclosure of the assets of Matrix Solutions LLC ("Matrix") -- and consequent purported transfer of not only the Matrix assets but also the Progenex assets, books, and financial records -- was proper or resulted through a sham transaction and/or actions or inactions of Ryan Page, who was then the sole manager of Progenex, that were orchestrated to favor creditors related to Ryan Page to the detriment of [Petitioners] and others; and (iii) issue her Final Award adjudicating all claims and defenses on the merits.

(Id. at 3.) The Arbitrator concluded that the transfer of the entirety of Progenex's assets to Mulligan appeared to have been engineered to avoid the consequences of default judgments awarded in other litigation and to extinguish the Petitioners' interests in Progenex. (Id. at 8.) The Arbitrator concluded that: (1) Petitioners were likely to prevail on their claims that the transfer of Progenex's assets to Mulligan was legally improper, (2) the balance of hardships favored Petitioners, (3) Petitioners were likely to suffer irreparable harm if Respondents were not enjoined from transferring any remaining Progenex assets, in that any interests in Progenex that may be granted to them in the Arbitrator's Final Award would be without value, and (4) the public interest in securing just and fair results in litigated or arbitrated matters favored the issuance of a preliminary injunction. (Id.) The Preliminary Injunction enjoined the Page Respondents, among others, from transferring or facilitating the transfer of Progenex assets, failing to provide Mr. Yip access to Progenex's financial information, failing to provide Mr. Yip with passwords, login, and account information to Progenex's accounting systems and merchant servicing accounts, and failing to cooperate with reasonable requests for information by Mr. Yip. (Id. at 9.)

On November 12, 2020, Petitioners filed a motion requesting that this Court confirm the Preliminary Injunction. (Doc. No. 34.) On January 4, 2021, the Page Respondents filed a motion to vacate the Preliminary Injunction. (Doc. No. 40.) On February 9, 2021, following a hearing with the parties, the Court granted Petitioners' motion to confirm the Preliminary Injunction and denied the Page Respondents' motion to vacate. (Doc. No. 48.)

20-cv-00922-H-WVG

### G.   Appointment of Ronnie Stanley

On October 20, 2020, the Arbitrator appointed Verdi as provisional manager of Progenex.[1]  (Doc. No. 74-9 Ex. H.)  On February 12, 2021, Petitioners filed an emergency equitable motion with the Arbitrator seeking the appointment of Ronnie Stanley ("Stanley") as Progenex's provisional manager.  (Doc. No. 74-12 Ex. K.)  On March 26, 2021, the Arbitrator terminated Verdi as Progenex's provisional manager and appointed Stanley.  (Doc. No. 74-12 Ex. A.)  The Arbitrator granted Stanley the authority to "retain[], consult[] with, and direct[] the undertakings of new independent counsel on behalf of [Progenex]," and to "protect the interests of [Progenex] . . . in this Arbitration and any related legal proceedings until a Final Award is issued."  (Id.)  The Arbitrator ordered that Stanley's appointment as provisional manager terminate "by the issuance of a Final Award, unless the Arbitrator orders otherwise."  (Id.)

On June 24, 2021, the Page Respondents filed a motion to vacate the Arbitrator's appointment of Stanley as provisional manager of Progenex.  (Doc. No. 74.)  On August 24, 2021, the Court denied the Page Respondents' motion.  (Doc No. 84.)

### H.   Orders to Show Cause

On April 27, 2021, following the Court's order confirming the Preliminary Injunction, the Petitioners filed a motion for an order to show cause why the Page Respondents and certain non-parties should not be held in contempt of court. (Doc. No. 52.)  On June 4, 2021, the Court issued an order denying the Petitioners' motion in its entirety.  (Doc. No. 73.)

On June 21, 2022, Petitioners filed another motion for an order to show cause why the Page Respondents and certain non-parties should not be held in contempt of court. (Doc. No. 86.)  The Petitioners alleged that the Page Respondents and the non-party

---

[1]   Verdi was appointed to perform two actions on behalf of Progenex: (1) to retain counsel for Progenex in the Utah Action; and (2) to file the required documents with the Wyoming Secretary of State to reinstate Progenex as an active LLC and make past due tax payments.  (Doc. No. 74-9 Ex. H.)

respondents violated (i) the asset freeze provisions of the Preliminary Injunction, and (ii) for allegedly concealing material evidence from the Court.[2]  (Id.)  On October 31, 2022, the Court issued an order denying Petitioners' motion in its entirety.  (Doc. No. 98.)

## I.    The Final Award

On September 30, 2022, the Arbitrator issued a Final Award.  (Doc. No. 97-1.)  The Final Award stated that Petitioners had "failed to prove their federal and state securities law claims . . . dilution, and breach of fiduciary duty/corporate waste claims against Respondents."  (Id. at 6.)  On the dilution claim, the Arbitrator "exercise[d] her equitable authority, which ha[d] been acknowledged and affirmed by the parties to this Arbitration, to adjust the ownership interests in Progenex of the [Petitioners] and Respondents."  (Id.)  The Arbitrator did so to "ameliorate the extent of the dilution of the passive investor [Petitioners'] shareholder interests in Progenex that resulted from the award of a large number of equity grants and performance option shares to the management team of Progenex."  (Id.)   The Arbitrator issued a capitalization table reflecting the final apportionment of the ownership interests in Progenex. (Doc. No. 97-1 Ex. A.)

The Final Award also suspended and held the interests of Conclave and its members in Progenex in abeyance,[3] forbid Conclave from exercising any rights as the "Principal Member" of Progenex, continued the tenure of Stanley as Progenex's manager, and

_____

[2]    The Petitioners second motion for an order to show cause stemmed from an August 2021 U.S. Patent and Trademark Office (USPTO) action (the "August 2021 USPTO Action").  (Doc. No. 86-2 Exs. B, C, D, F, G.)  The August 2021 USPTO Action is a continuation of the dispute over the Progenex trademarks discussed in the Court's initial contempt order.  (Doc. No. 73 at 9–10.)  The USPTO records indicate that on December 30, 2019, the Progenex trademarks were assigned from Progenex to Matrix Solutions and then from Matrix Solutions to Mulligan. (Doc. No. 59-7 Ex. 1.) The August 2021 USPTO Action concerned the Page Respondents and non-party respondents' disclosure that an additional assignment occurred on December 31, 2019, whereby Mulligan assigned the Progenex trademarks to Gravity Brands, LLC. (Doc Nos. 92 at 4; 93 at 9; 93-5 Ex. A.)

[3]    The Arbitrator stated that the interests will be held in abeyance "until there is a judicial determination as to whether Conclave and its embers shall be dissociated with or expelled from membership in Progenex." (Doc. No. 97-1 at 33.)

determined that Thomas and Verdi were not required to pay one-third of the JAMS fees and costs incurred by the other parties in the action. (Doc. No. 97-1 at 33.)

Additionally, the Arbitrator issued an injunction as part of the Final Award (the "Injunction"). (Doc. No. 97-1 Ex. B.) The Arbitrator issued the Injunction "for the protection and conservation of property and assets that are at issue in this Arbitration . . . and are subject to her Final Award." (Id. at 3.) Specifically, the Arbitrator found that "the relief granted to [Petitioners] in her Final Award may be rendered ineffectual without the issuance of this Injunction Pursuant to Final Award continuing to enjoin Respondents from the transfer, assignment, or dissipation of any Progenex assets." (Id. at 7.)

The Injunction enjoins the Page Respondents and non-party respondents from transferring or otherwise moving any Progenex assets or property, completing or facilitating the transfer of any Progenex assets pursuant to the Foreclosure Event, failing to provide full and complete access to Progenex's financial information to facilitate an accounting of the Progenex Entities (Progenex Holdings, LLC, the Conclave LLC, and Matrix Solutions LLC), failing to timely cooperate with reasonable requests for such information, failing to provide passwords, login, and account information for the Progenex Entities' accounting programs and merchant servicing accounts, and failing to promptly give notice of the Injunction to all known officers, directors, agents, employees, and managers of the enjoined parties and to Mulligan. (Id.)

The Injunction "shall be dissolved upon the issuance of a final judgment in the [] Utah Action or by another court of competent jurisdiction or upon resolution by settlement of the new claims related to acts and omissions of Ryan Page and Mulligan and its members commencing in or about December 2019 . . . including the Mulligan nonjudicial foreclosure of the Matrix assets and indirectly the Progenex assets." (Id.)

## II.   LEGAL STANDARDS

### A.   Confirming the Award

Section 9 of the Federal Arbitration Act ("FAA") provides that a district court, upon timely petition, "must" confirm an arbitration award "unless the award is vacated,

modified, or corrected as prescribed in sections 10 and 11." 9 U.S.C. § 9; <u>Biller v. Toyota Motor Corp.</u>, 668 F.3d 655, 662 (9th Cir. 2012). "[C]onfirmation of an arbitration award is appropriate only where the parties 'in their agreement have agreed that a judgment of the court shall be entered upon the award." <u>Com. Enters. v. Liberty Mut. Ins. Co.</u>, 958 F.2d 376 (9th Cir. 1992); <u>see</u> <u>Qorvis Commc'ns, LLC v. Wilson</u>, 549 F.3d 303, 308 (4th Cir. 2008) ("[C]ourts must undertake enforcement of arbitration awards 'so long as the parties contemplated judicial enforcement.'") (quoting <u>Hall Street Associates, L.L.C. v. Mattel, Inc.</u>, 552 U.S. 576, 587 n.6 (2008)).

Confirmation of an arbitration award typically "is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." <u>Romero v. Citibank USA, Nat'l Ass'n</u>, 551 F. Supp. 2d 1010, 1014 (E.D. Cal. 2008) (quoting <u>Florasynth, Inc. v. Pickholz</u>, 750 F.2d 171, 175–76 (2d Cir. 1984)). This limited and summary review aims to honor the parties' contractual choices and further the FAA's "national policy favoring arbitration and plac[ing] arbitration agreements on equal footing with all other contracts." <u>Buckeye Check Cashing, Inc. v. Cardegna</u>, 546 U.S. 440, 443 (2006); <u>see also</u> <u>Thompson v. Tega-Rand Int'l</u>, 740 F.2d 762, 763 (9th Cir. 1984) ("Where the parties have agreed to arbitration, the court will not review the merits of the dispute."); <u>Kyocera Corp. v. Prudential Bache Trade Servs.</u>, 341 F.3d 987, 998 (9th Cir. 2003) ("These grounds afford an extremely limited review authority, a limitation that is designed to preserve due process but not to permit unnecessary public intrusion into private arbitration matters.").

## B.   Vacating the Award

Judicial review of an arbitration award is "both limited and highly deferential." <u>Comedy Club, Inc. v. Improv W. Assocs.</u>, 553 F.3d 1277, 1288 (9th Cir. 2009) (quoting <u>Poweragent Inc. v. Elec. Data Sys. Corp.</u>, 358 F.3d 1187, 1193 (9th Cir. 2004)). "Under the FAA, courts may vacate an arbitrator's decision 'only in very unusual circumstances.'" <u>Oxford Health Plans LLC v. Sutter</u>, 569 U.S. 564, 568 (2013) (citing <u>First Options of Chicago, Inc. v. Kaplan</u>, 514 U.S. 938, 942 (1995)). "[Section 10] of the

FAA provides no authorization for a merits review." <u>Biller</u>, 668 F.3d at 664.

Section 10(a)(4) of the FAA "authorizes a federal court to set aside an arbitral award 'where the arbitrator[ ] exceeded [his] powers.'" <u>Oxford Health Plans</u>, 569 U.S. at 569 (citing 9 U.S.C. § 10(a)(4)). "[The Ninth Circuit has] held that arbitrators 'exceed their powers' when the award is 'completely irrational' or exhibits a 'manifest disregard of the law.'" <u>Aspic Eng'g & Constr. Co. v. ECC Centcom Constructors LLC</u>, 913 F.3d 1162, 1166 (9th Cir. 2019). "A party seeking relief under that provision bears a heavy burden." <u>Oxford Health Plans</u>, 569 U.S. at 569. "Because the parties 'bargained for the arbitrator's construction of their agreement,' an arbitral decision 'even arguably construing or applying the contract' must stand, regardless of a court's view of its (de)merits." <u>Id.</u> "Neither erroneous legal conclusions nor unsubstantiated factual findings justify federal court review" of an arbitration award under the FAA. <u>Aspic Eng'g & Constr. Co.</u>, 913 F.3d at 1166 (quoting <u>Bosack v. Soward</u>, 586 F.3d 1096, 1102 (9th Cir. 2009)). "It is not enough for petitioners to show that the panel committed an error—or even a serious error." <u>Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.</u>, 559 U.S. 662, 671 (2010). "It is only when [an] arbitrator strays from interpretation and application of the agreement and effectively 'dispense[s] his own brand of industrial justice' that his decision may be unenforceable." <u>Id.</u> (quoting <u>Major League Baseball Players Ass'n v. Garvey</u>, 532 U.S. 504, 509 (2001) (per curiam)).

"[F]or an arbitrator's award to be in manifest disregard of the law, '[i]t must be clear from the record that the arbitrator [] recognized the applicable law and then ignored it.'" <u>Bosack</u>, 586 F.3d at 1104 (quoting <u>Comedy Club</u>, 553 F.3d at 1290). The moving party bears the burden to "show that the arbitrator 'underst[oo]d and correctly state[d] the law, but proceed [ed] to disregard the same,'" by pointing to concrete evidence in the record. <u>See</u> <u>id.</u> (quoting <u>Collins v. D.R. Horton, Inc.</u>, 505 F.3d 874, 879 (9th Cir. 2007)).

If there is no Section 10 issue, "confirmation [of the award] is required even in the face of erroneous findings of fact or misinterpretations of law." <u>Lagstein v. Certain Underwriters at Lloyd's, London</u>, 607 F.3d 634, 640 (9th Cir. 2010) (citation omitted).

## III.   PAGE RESPONDENTS' MOTION TO CONFIRM, IN PART, AND VACATE, IN PART, FINAL AWARD

### A.   Page Respondents' Motion to Confirm

The Page Respondents argue that the Arbitrator's award on the Original Claims should be confirmed.  (Doc. No. 105 at 34.)  Specifically, this includes the Arbitrator's finding that the Petitioners "failed to prove their federal and state securities law claims . . . dilution, and breach of fiduciary duty/corporate waste claims against Respondents" and the Arbitrator's decision to exercise her equitable authority "to adjust the ownership interests in Progenex."[4]  (Doc. No. 97-1 at 6; Doc. No. 105. at 8.)  Progenex does not dispute that the Original Claims should be confirmed.  (See generally Doc. No. 112.)  Accordingly, the Court confirms the Arbitrator's award on the Original Claims. 9 U.S.C. § 9; Biller v. Toyota Motor Corp., 668 F.3d 655, 662 (9th Cir. 2012).

### B.   Page Respondents' Motion to Vacate

The Page Respondents argue that the Court should vacate the following four parts of the Final Award: (i) the Injunction; (ii) Ronnie Stanley's appointment; (iii) holding the interests of Conclave and its members in abeyance; and (iv) the division of the arbitration's fees and costs.  The Court addresses each in turn.

#### i.   Injunction Pursuant to Final Award

The Page Respondents argue the Injunction should be vacated pursuant to Section 10(a)(4) of the FAA because the Arbitrator purportedly "exceed[ed] her powers." (Doc. No. 105 at 15.) The Page Respondents offer several reasons for why the Injunction was allegedly issued in excess of the Arbitrator's authority.  The Court addresses each in turn.

The Page Respondents' object to the Arbitrator's consideration of the Foreclosure Event when issuing the Injunction and contend the Foreclosure Event is outside the scope of the arbitration.  (Id. at 15-20.)  The Court disagrees.  The Page Respondents have not

---

[4]   The Page Respondents oppose confirmation of the Arbitrator's decision to hold the interests of Conclave and its members in abeyance.  (Doc. No. 105 at 34 n.20.)

met their burden to show the Arbitrator exceeded her powers by considering the Foreclosure Event when issuing the Injunction.  <u>Oxford Health Plans</u>, 569 U.S. at 569. Here, the Page Respondents admit that the Petitioners "succeed[ed] . . . on a third claim [of wrongful dilution]" which resulted in "a new apportionment of shares in the Progenex Holdings cap table." (Doc. No. 105 at 8.)  The Arbitrator issued the Injunction to protect this relief and make sure it was not "rendered ineffectual" by the potentially invalid Foreclosure Event or any similar transfers in the future.  (Doc. No. 97-1 Ex. B at 7.)  It was thus not "completely irrational" for the Arbitrator to consider the Foreclosure Event when issuing the Injunction to protect the reapportioned ownership interests.  <u>Aspic Eng'g & Constr. Co.</u>, 913 F.3d at 1166.

Next, the Page Respondents argue that the arbitrator exceeded her authority by Issuing an injunction that contains interim relief.  (Doc. No. 105 at 20-22, 24-27.)  Here, the Arbitrator had authority to issue both interim equitable relief and permanent equitable relief because the Agreement gave the Arbitrator the authority to issue any remedy available in a court of law.  (Doc. No. 106-3 Ex. C at 32.)  Specifically, the Arbitrator had authority to issue interim relief based on Section 16.2 of the Agreement and JAMS Rule 24(e).  (Doc. No. 97-1 Ex. B at 3.); JAMS Rule 24(e).  Section 17.10 of the Agreement provided the Arbitrator with the authority to issue "specific performance" and stated "appropriate injunctive relief may be applied for and granted in connection" with the Agreement's obligations.  (Doc. No. 106-3 Ex. C at 34.)  And JAMS Rule 24(c) gave the Arbitrator the authority to issue "any remedy or relief that is just and equitable and within the scope of the Parties Agreement, including, but not limited to, specific performance of a contract or any other equitable or legal remedy."  JAMS Rule 24(c).

The Page Respondents rely on a single decision, <u>Comedy Club</u>, 553 F.3d 1277, for their argument that the Arbitrator exceeded her authority in issuing an Injunction with interim relief.  (Doc. No. 105 at 26.)  <u>Comedy Club</u> is readily distinguishable.  In <u>Comedy Club</u>, the arbitrator issued a permanent injunction that enjoined a company and its "affiliates" from opening or operating any other comedy club other than those already open

or under construction as of a certain date.  553 F.3d at 1281–82.  The agreement contained a broad definition of "affiliates," which included family members, former spouses of company executives, and relatives of former spouses.  Id. at 1282–83.  The Ninth Circuit vacated the portion of the award enjoining unrelated family members and former spouses and their relatives, holding that the arbitrator exceeded his authority by trying to bind non-parties.  Id. at 1286–87.  Here, the Injunction does not bind any non-parties to the arbitration.  (Doc. No. 97-1 Ex. B at 9.)  Additionally, the Ninth Circuit's analysis in Comedy Club was tied to the "manifest disregard of the law" standard as they found that the arbitrator ignored clearly established state law prohibiting covenants not to compete.  Id. at 1287; American, Etc., Inc., v. Applied Underwriters Captive Risk Assurance Company, Inc., No. 17-cv-03660-DMR, 2017 WL 6622993, at *5 (N.D. Cal. Dec. 28, 2017) ("The Ninth Circuit's decision in Comedy Club is instructive on the issue of "manifest disregard of the law."")  Accordingly, the Page Respondents reliance on Comedy Club is unfounded.   In sum, the Page Respondents have not met their burden to show the Arbitrator exceeded her powers in issuing the Injunction as part of her Final Award.  Oxford Health Plans, 569 U.S. at 569.

The Page Respondents also argue that the arbitrator exceeded her authority because the Injunction violates the doctrine of functus officio—the principle that an arbitrator must complete her work with finality.[5]  (Doc. No. 105 at 24-25.)  The Page Respondents take issue with the Arbitrator "continu[ing] to control [the parties] through provisional relief . . . ." (Id. at 25.)  However, "an arbitrator generally has the authority to enter injunctive relief against a party that has entered into an arbitration agreement . . . if the arbitration agreement

---

[5]      The Page Respondents also argue that the arbitrator exceeded her authority because the Injunction was issued after the ninety (90) day arbitration term.  (Doc. No. 105 at 22-23).  Such length alone does not "clear [the] high hurdle" required for vacatur under Section 10(a)(4).  Stolt-Nielsen S.A., 559 U.S. at 671.  Additionally, given the arbitration's voluminous record, the Arbitrator had grounds to reopen the arbitration.  JAMS Rule, 22(i) ("At any time before the Award is rendered, the Arbitrator may, sua sponte or on application of a Party for good cause shown, reopen the Hearing.")

at issue permits it." <u>Ferguson v. Corinthian Colleges, Inc.</u>, 733 F.3d 928, 937 (9th Cir. 2013); <u>see also</u> <u>Alzheimer's Disease and Related Disorders Ass'n, Inc. v. Alzheimer's Disease and Related Disorders Ass'n of San Diego, Inc.</u>, No. 17-CV-1690-BTM-JLB, 2018 WL 1562012, at \*4 (S.D. Cal Mar. 29, 2018)(Confirming an arbitral award with injunctive relief because "courts have recognized an arbitrator's power to award equitable relief, including injunctive relief against a party to an arbitration agreement"). Here, the Agreement allows the arbitrator to issue injunctive relief. (Doc. No. 106-3 Ex. C at 32.) Thus, the Arbitrator did not exceed her authority and violate the <u>functus</u> <u>officio</u> doctrine by issuing the Injunction as part of her Final Award. <u>Oxford Health Plans</u>, 569 U.S. at 569.

Next, the Page Respondents argue that the Injunction is unnecessary because the Foreclosure Event is at issue in the Utah Action. (Doc. No. 105 at 27-28.) Section 10 of the FAA provides for the exclusive and limited circumstances in which a court may vacate an arbitration award. <u>Biller</u>, 668 F.3d at 664. Here, the Page Respondents fail to make an argument under any of Section 10's enumerated grounds. <u>See</u> 9 U.S.C. § 10(a). As a result, the Court rejects the Page Respondents' ground for vacating the Injunction award. <u>Aspic Eng'g & Constr. Co.</u>, 913 F.3d at 1162.

Additionally, the Page Respondents request that the Court "enter factual findings to remove confusion and permit the Page Respondents to appropriately follow the order." (Doc. No. 105 at 28.) Section 11 of the FAA provides the limited circumstances when a court "may make an order modifying or correcting the award." 9 U.S.C. § 11. Courts may modify or correct an award when there was a material miscalculation or mistake in the description of something, when the arbitrator awarded upon a matter not submitted to them, and when the award is imperfect in matter or form. <u>Id.</u> Here, none of Section 11's enumerated grounds are present. The Court therefore declines to modify the Injunction. <u>See</u> <u>Kyocera Corp.</u>, 341 F.3d at 997–98 (9th Cir. 2003).

In sum, the Page Respondents have not met their burden to establish the necessary grounds for vacating the Injunction. <u>See</u> <u>Oxford Health Plans</u>, 569 U.S. at 569; <u>U.S. Life Ins. Co. v. Super. Nat. Ins. Co.</u>, 591 F.3d 1167, 1173 (9th Cir. 2010) ("The burden of

establishing grounds for vacating an arbitration award is on the party seeking it."); <u>Comedy Club</u>, 553 F.3d at 1288.

ii.   Appointment of Ronnie Stanley

Next, the Page Respondents seek to vacate Stanley's appointment because the Arbitrator "exceed[ed] her powers" and "manifestly disregarded the law." (Doc. No. 105 at 28, 30.) The Page Respondents offer multiple reasons for why Stanley's appointment was allegedly issued in excess of the Arbitrator's authority.  The Court addresses each in turn.

The Page Respondents argue that "[n]othing in either [the] arbitration agreement or in the Statement of Claims permits the Arbitrator to grant this relief."  (<u>Id.</u> at 29.)  The Court disagrees.  "The court must defer to the arbitrator's decision as long as the arbitrator . . . even arguably constru[ed] or appli[ed]" the agreement. <u>U.S. Life Ins. Co.</u>, 591 F.3d at 1177 (internal quotations omitted).  Here, Section 17.10 of the Agreement provided the Arbitrator with the authority to issue "specific performance."  (Doc. No. 106-3 Ex. C at 34.)  The Agreement also required that "in no instance shall there be less than one (1) Manager."  (<u>Id.</u> at 12.)  Additionally, in the operative amended joint statement of claims, the Petitioners requested specific equitable relief "immediately removing [Ryan] Page (and Shamion and Luke Adams and Paul Gomez) from any and all positions as Managers in the Progenex organization, [and] appointing independent replacement Co-Managers . . . ." (Doc. No. 106-7 Ex. G at 91-92.) By ensuring there is a manager through Stanley's appointment, the Arbitrator draws from the Agreement.  <u>Oxford Health Plans</u>, 569 U.S. at 569.  Accordingly, the Page Respondents have not established that the Arbitrator exceeded her powers. <u>Stolt-Nielsen S.A.</u>, 559 U.S. at 671.

Next, the Page Respondents argue the appointment is completely irrational because it ends at some indefinite time in the future. (Doc. No. 105 at 29-30.)  The Arbitrator held that Stanley's tenure as Progenex's manager will continue through the earlier of:

"a) his resignation; (b) the election of a replacement Manager by the members of Progenex, excluding Conclave and its members; or (c) the later of (i) the

20-cv-00922-H-WVG

resolution of this Arbitration (i.e., through confirmation and any appeal, or, in the event of vacatur, through any subsequent arbitration and confirmation thereof, including any and all appeals); (ii) the resolution of the Mulligan Utah Action (through any appeals); and (iii) the final adjudication (through all appeals) or settlement of all disputes between any of Matrix, Mulligan, Progenex, or any members thereof."

(Doc. No. 97-1 at 33.)  Here, the Page Respondents have not met their burden to show vacatur is appropriate under Section 10(a)(4). Oxford Health Plans, 569 U.S. at 569. The Arbitrator's terms for extending Stanley's tenure are tied to specific reasons for the appointment.  For example, in the initial order appointing Stanley as provisional manager of Progenex, the Arbitrator noted that Stanley was needed to "retain[], consult[] with, and direct[] the undertaking of new independent counsel on behalf of Progenex" specifically in connection with the Utah Action.  (Doc. No. 74-2 Ex. A at 2.)  Given that the Utah Action is ongoing, it is not completely irrational for the Arbitrator to have tied his tenure to the resolution of the Utah Action or settlement of issues in the Utah action.   Aspic Eng'g & Constr. Co., 913 F.3d at 1166.

Further, the Page Respondents only cite to Comedy Club to support their argument. (Doc. No. 105 at 30.)  However, Comedy Club held that an arbitrator exceeds her authority when attempting to bind non-parties, not when an arbitrator issues relief that is tied to an event involving non-parties.  See 553 F.3d at 1286–87; see also American, Etc., Inc., 2017 WL 6622993, at *5 (discussing the scope of Comedy Club's holding).  Thus, the Page Respondents have not met their burden to show the Arbitrator exceeded her powers by appointing Stanley.  Oxford Health Plans, 569 U.S. at 569.

The Page Respondents also assert the Arbitrator "manifestly disregarded the law" in appointing Stanley. (Doc. No. 105 at 30-32.)  The FAA does not empower the Court to review an arbitration award for legal or factual errors.  See Aspic Eng'g & Constr. Co., 913 F.3d at 1166.  The Page Respondents are essentially asking the Court to conduct a merits review to determine whether Stanley is a conflicted individual.  Such a question exceeds the Court's limited judicial review authority.  See Aspic Eng'g & Constr. Co., 913 F.3d at

20-cv-00922-H-WVG

1166; <u>Biller</u>, 668 F.3d at 664.   Accordingly, the Court finds no basis to vacate the Arbitrator's appointment of Stanley.

In sum, the Page Respondents have not met their burden to establish the necessary grounds for vacating Stanley's appointment. <u>See</u> <u>Oxford Health Plans</u>, 569 U.S. at 569; <u>U.S. Life Ins. Co. v. Super. Nat. Ins. Co.</u>, 591 F.3d 1167, 1173 (9th Cir. 2010) ("The burden of establishing grounds for vacating an arbitration award is on the party seeking it."); <u>Comedy Club</u>, 553 F.3d at 1288.

iii.    Interests of Conclave and its Members

Next, the Page Respondents seek to vacate that the Arbitrator's decision to hold the interests of Conclave and its members in abeyance. (Doc. No. 105 at 15, n.10.)   The party seeking vacatur under Section 10(a)(4) "must clear a high hurdle" to obtain it.   <u>Stolt-Nielsen S.A.</u>, 559 U.S. at 671.   Here, the Page Respondents failed to provide a specific analysis detailing why it was improper to hold the interests of Conclave and its members in abeyance.   (<u>See</u> <u>generally</u> Doc. Nos. 105, 118.)   Additionally, the Arbitrator held the interests of Conclave and its members in abeyance to comport with the Agreement.   (Doc. No. 97-1 at 31-32.)   The Arbitrator reasoned that "the actions of Conclave and its members to compete with Progenex" through the "transfer and licensing of Progenex's intellectual property" means that the "Conclave is acting in material breach of Section 4.9 of Progenex's Operating Agreement and should be removed as a member of Progenex."   (<u>Id.</u> at 31.)   Unable to remove them under Wyoming law, the Arbitrator decided to suspend and hold the Conclave and its members' interest in abeyance until "a judicial order is rendered pursuant to Wyoming Statutes Section 17-29-30."   (<u>Id.</u> at 31-32.)   Under the circumstances, the Arbitrator did not dispense her own brand of justice by straying from the application of the Agreement and thus the Arbitrator did not exceed her authority.   <u>Stolt-Nielsen S.A.</u>, 559 U.S. at 671; <u>Oxford Health Plans</u>, 569 U.S. at 569.

In sum, the Page Respondents have not met their burden to establish the necessary grounds to vacate the Arbitrator's award holding the interests of Conclave and its members in abeyance. <u>See</u> <u>Oxford Health Plans</u>, 569 U.S. at 569; <u>U.S. Life Ins. Co. v. Super. Nat.</u>

19

1  Ins. Co., 591 F.3d 1167, 1173 (9th Cir. 2010) ("The burden of establishing grounds for
2  vacating an arbitration award is on the party seeking it.").

3                              iv.    Arbitration Fees and Costs

4         Last, the Page Respondents seek to vacate and/or modify the Arbitrator's decision
5  on arbitration fees and costs because she "violated the Arbitration Agreement." (Doc. No.
6  105 at 33; Doc. No. 118 at 16.)  The Arbitrator maintained that the Petitioners and the
7  Respondents will each pay for one-half of the arbitration's fees and costs. (Doc. No. 97-1
8  at 34.)  She decided that Thomas and Verdi will not be required to pay for one-third of the
9  fees and costs as a separate party because their interests aligned with the Petitioners'
10 interests.  (Id.)  The question is whether the Arbitrator dispensed her own brand of justice
11 by straying from interpretation and application of the Agreement.  Stolt-Nielsen S.A., 559
12 U.S. at 671.  Here, the Agreement states that the "costs of the arbitration, including any
13 JAMS administration fee, the arbitrator's fee, and costs for the use of the facilities during
14 the hearings, shall be borne equally by the parties to the arbitration." (Doc. No. 106-3 Ex.
15 C at 33.)  Additionally, JAMS Rule 31(d) states that "[e]ntities or individuals whose
16 interests are not adverse with respect to the issues in dispute shall be treated as a single
17 party for purposes of JAMS' assessment of fees." JAMS Rule 31(d).  Thus, the Arbitrator
18 did not stray from the Agreement when she determined that Thomas and Verdi should not
19 be required to pay one-third of the fees and costs because their interests align with the
20 Petitioners.  Stolt-Nielsen S.A., 559 U.S. at 671.  Further, whether Thomas and Verdi's
21 interests were separate from or aligned with the Petitioners is a merits question not proper
22 for the Court to decide through its limited judicial review authority. Biller, 668 F.3d at 664;
23 Comedy Club, 553 F.3d at 1288.

24        Thus, the Court finds no ground to vacate the Arbitrator's award regarding
25 arbitration fees and costs and declines to modify the award as well. See Oxford Health
26 Plans, 569 U.S. at 569; U.S. Life Ins. Co. v. Super. Nat. Ins. Co., 591 F.3d 1167, 1173 (9th
27 Cir. 2010) ("The burden of establishing grounds for vacating an arbitration award is on the
28 party seeking it."); see also Kyocera Corp., 341 F.3d at 997–98 (9th Cir. 2003).

v.      Summary

In sum, the Court denies the Page Respondents' Motion to confirm, in part, and to vacate, in part, the Final Award because the Page Respondents have not met their burden to establish any ground to vacate the four disputed parts of the Final Award.  Oxford Health Plans, 569 U.S. at 569.

## IV.   PROGENEX'S CROSS-MOTION TO CONFIRM FINAL AWARD

The Court grants Progenex's Cross-Motion to confirm the Final Award.  The parties' Agreement provides that any court of competent jurisdiction may enter judgment. (Doc. No. 106-3 Ex. C at 32.); see Com. Enters. v. Liberty Mut. Ins. Co., 958 F.2d 376 (9th Cir. 1992) ("[C]onfirmation of an arbitration award is appropriate only where the parties 'in their agreement have agreed that a judgment of the court shall be entered upon the award.'") Progenex has properly sought a judgment in this Court because the arbitration was held in San Diego, California.  See 9 U.S.C. § 9.

Further, Section 9 of the FAA requires that a district court "must," upon timely petition, confirm an arbitration award "unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11." 9 U.S.C. § 9; Biller, 668 F.3d at 662.  Here, Progenex timely filed the motion to confirm the arbitration award.  (Doc. No. 112.)  Additionally, the Court denied the Page Respondents' Motion and declined the Page Respondents' request that the award be modified or corrected.  Thus, the Court confirms the Final Award.

## V.    CONCLUSION

In conclusion, the Court denies the Page Respondents' Motion to confirm, in part, and vacate, in part, the Final Award. (Doc. No. 105.)  The Court grants Progenex's Cross-Motion to confirm the Final Award including the injunctive relief.  (Doc. No. 112.)

**IT IS SO ORDERED.**

DATED: March 20, 2023

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

21

20-cv-00922-H-WVG